# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# CLEVELAND DIVISION

| | |
|---|---|
| UNION HOME MORTGAGE CORP., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-2690 |
| JASON JENKINS, | ) |
| and | ) Judge: |
| JOSEPH DELLA TORRE, | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Verified Complaint for Preliminary and Permanent Injunctive Relief, and Damages against Defendants Jason Jenkins ("Jenkins") and Joseph Della Torre ("Della Torre"), hereby alleges and states as follows:

## PARTIES

1. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

2. Jenkins was previously employed by Union Home as a Branch Manager at its office located in Grand Rapids, Michigan.

3. Della Torre was previously employed by Union Home as an Area Sales Manager at its office located in Rehoboth Beach, Delaware.

## JURISDICTION AND VENUE

4. Paragraphs 1-3 are incorporated herein by reference.

5. This is an action seeking injunctive relief and damages against Jenkins and Della Torre based on their violations of employment agreements with Union Home, as well as statutory violations and violations of the common law.

6. Union Home is an Ohio corporation with its principal place of business in Strongsville, Cuyahoga County, Ohio.

7. Jenkins is a resident and citizen of Michigan and resides in Grand Rapids, Kent County, Michigan.

8. Della Torre is a resident and citizen of Delaware and resides in Rehoboth Beach, Sussex County, Delaware.

9. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

10. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332, as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Jenkins' agreement with Union Home (the "Jenkins Employee Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "may only be instituted and prosecuted in the state or federal courts of Ohio and each party hereby waives the right to challenge jurisdiction or seek to change venue." A true and accurate copy of the Jenkins Employee Agreement is attached hereto as Exhibit A.

12. Della Torre's agreement with Union Home (the "Della Torre Employee Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "may only be instituted and prosecuted in the state or federal courts of Ohio and each party hereby waives the right to change of venue." A true and accurate copy of the Della Torre Employee Agreement is attached hereto as <u>Exhibit B</u>.

13. The Court has jurisdiction to hear this case and venue is proper in this Court.

14. The choice of law provision in the Jenkins Employee Agreement and the Della Torre Employee Agreement identifies Ohio law as governing the contractual claims at issue in this matter.

## FACTUAL BACKGROUND

### Jenkins' Employment with and Contractual Obligations to Union Home

15. Paragraphs 1-14 are incorporated herein by reference.

16. On January 27, 2020, Jenkins and Union Home entered into the Jenkins Employee Agreement, pursuant to which Jenkins would serve as a Senior Loan Officer and Branch Manager for Union Home at its Grand Rapids, Michigan office. (Ex. A).

17. As a Senior Loan Officer and Branch Manager, Jenkins acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

18. As a Senior Loan Officer and Branch Manager, Jenkins was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

19. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Senior Loan Officers and Branch Managers.

20. In the Jenkins Employee Agreement, Jenkins agreed as follows:

> Employee agrees that he/she will not become employed in the same or similar capacity as he/she was employed with the Company by a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and **October 30, 2022**; the "Restricted Area" shall mean a one hundred (100) mile radius from either the Company's headquarters or any branch office of the Company to which Employee was assigned during the Restricted Period; and a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business.

(Ex. A, ¶3).

21. Jenkins agreed that he "shall not employ or seek to employ any person who is employed by [Union Home] or otherwise directly or indirectly induce such person or entity to leave his/her employment." (*Id.*).

22. Jenkins agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶4).

23. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Jenkins] or known by [Jenkins] as a result of [his] . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, [and] customer files," among other things. (*Id.*).

24. Jenkins also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or an injunction by a court of competent jurisdiction." (*Id.* at ¶ 6).

25. Jenkins also agreed to "devote [his] best efforts to such full time employment as long as it shall continue." (*Id.* at ¶1).

4

26. Further, Jenkins agreed that he "shall be liable for any attorney fees expended by [Union Home] to enforce [the Jenkins Employee Agreement]." (*Id*. at ¶ 6).

27. Jenkins was a trusted employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

28. The Jenkins Employee Agreement, is a binding and enforceable contract between Union Home and Jenkins.

29. Union Home performed its material obligations under the Jenkins Employee Agreement.

30. Jenkins owed and continues to owe legal and contractual obligations to Union Home pursuant to the Jenkins Employee Agreement.

**Della Torre's Employment with and Contractual Obligations to Union Home**

31. On February 28, 2018, Della Torre and Union Home entered into the Della Torre Employee Agreement, pursuant to which Della Torre would serve as an Area Sales Manager for Union Home at its Rehoboth Beach, Delaware office. (Ex. B).

32. As an Area Sales Manager, Della Torre acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

33. As an Area Sales Manager, Della Torre was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

34. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Area Sales Managers.

35. In the Della Torre Employee Agreement, Della Torre agreed as follows:

> Employee agrees that he/she will not become employed in the same or similar capacity as he/she was employed with the Company by a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and **EXPIRATION DATE <u>February 28, 2019</u>**; the "Restricted Area" shall mean a one hundred (100) mile radius from either the Company's headquarters or any branch office of the Company to which Employee was assigned during the Restricted Period; and a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business.

(Ex. B, ¶3).

36. Della Torre agreed that he "shall not employ or seek to employ any person who is employed by [Union Home] or otherwise directly or indirectly induce such person or entity to leave his/her employment." (*Id*.).

37. Della Torre agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶4).

38. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Della Torre] or known by [Della Torre] as a result of [his] . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, [and] customer files," among other things. (*Id.*).

39. Della Torre also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or a preliminary or permanent injunction by a court of competent jurisdiction." (*Id.* at ¶ 4(b)).

6

40. Della Torre also agreed to "devote [his] best efforts to such full time work and employment as long as it shall continue…" (*Id.* at ¶1).

41. Further, Della Torre agreed that he "shall be liable for any attorney fees expended by [Union Home] to enforce Paragraphs 3 or 4 [of the Della Torre Employee Agreement]." (*Id.* at ¶ 4(b)).

42. Della Torre and Union Home entered into an Employment Agreement Extension Addendum (the "Della Torre Employee Agreement Addendum") which extended the expiration date of the Della Torre Employment Agreement, and specifically the non-competition provisions of paragraphs 3 and 4 of the Della Torre Employee Agreement, to **August 28, 2021**. A true and accurate copy of the Della Torre Employee Agreement Addendum is attached hereto as <u>Exhibit C.</u>

43. Della Torre was a trusted employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

44. The Della Torre Employee Agreement, as modified by the Della Torre Employee Agreement Addendum, is a binding and enforceable contract between Union Home and Della Torre.

45. Union Home performed its material obligations under the Della Torre Employee Agreement.

46. Della Torre owed and continues to owe legal and contractual obligations to Union Home pursuant to the Della Torre Employee Agreement.

**Jenkins Resigns from Union Home, Discloses Union Home's Confidential Information and Immediately Begins Competing With Union Home**

47. On or about November 28, 2020, Jenkins resigned from his position as Senior Loan Officer and Branch Manager with Union Home.

48. Immediately prior to his resignation from Union Home on November 28, 2020, Jenkins sent himself, through his personal email account, Union Home confidential information, including but not limited to confidential information about Union Home's business practices, customers, prospective customers, and referral sources.

49. There was no legitimate Union Home business purpose for Jenkins to send himself this information immediately prior to his resignation from Union Home.

50. Jenkins has informed Union Home that, upon his resignation, he intends to immediately begin working for CrossCountry Mortgage, LLC ("CrossCountry") as a Senior Loan Officer or Branch Manager in or around Grand Rapids, Michigan.

51. CrossCountry is a direct competitor of Union Home that competes with Union Home in and around Grand Rapids, Michigan, among other places.

52. Jenkins' employment with CrossCountry is in the same or similar capacity as his prior work for Union Home.

53. Jenkins is now competing with Union Home in the same market in which he worked for Union Home and clearly within one hundred miles of the Union Home office in Grand Rapids, Michigan at which he worked.

54. Furthermore, based on statements made by Jenkins as well as Jenkins' intent to immediately begin working for CrossCountry upon his resignation of employment with Union Home, Jenkins sent himself the Union Home confidential information while he was discussing his future employment with CrossCountry.

55. As a result, Jenkins sent himself the Union Home confidential information for the purpose of providing it to CrossCountry and/or using it while employed by CrossCountry to compete with Union Home.

### Della Torre Resigns from Union Home, Discloses Union Home's Confidential Information and Immediately Begins Competing With Union Home

56. On or about November 24, 2020, Della Torre resigned from his position as an Area Sales Manager with Union Home.

57. Union Home was informed on November 30, 2020 by Lindsey Morse, the Branch Coordinator for CrossCountry that, Della Torre is now working for CrossCountry. Furthermore, Ms. Morse stated that CrossCountry wanted to assume the lease on Union Home's Rehoboth Beach, Delaware location so that Della Torre could work for CrossCountry in the very same location in which he had previously worked for Union Home.

58. CrossCountry is a direct competitor of Union Home that competes with Union Home in and around Rehoboth Beach, Delaware, among other places.

59. Della Torre's employment with CrossCountry is in the same or similar capacity as his prior work for Union Home.

60. Della Torre is now competing with Union Home in the same market in which he worked for Union Home and clearly within one hundred miles of the Union Home office in Rehoboth Beach, Delaware at which he worked.

### Jenkins Solicits his Subordinates on Behalf of a Competitor While Employed by Union Home

61. In the Jenkins Employee Agreement, Jenkins agreed not to employ or seek to employ any person who is employed by Union Home or otherwise directly or indirectly induce such person to leave their employment. (Ex. A, ¶3).

9

62. Members of Jenkins' team at Union Home's branch in Grand Rapids, Michigan, including Loan Officer and Team Captain Becky Bosch and Production Assistant Julie Kamer, both submitted their resignations from employment with Union Home on November 27, 2020.

63. Based on Jenkins' statements to Union Home, Ms. Bosch and Ms. Kamer will be joining Mr. Jenkins at CrossCountry, at his request.

64. Jenkins specifically admitted soliciting members of his team in his resignation email, sent November 28, 2020, stating "I am not trying to take <u>anyone other than my team and have no plans to recruit anyone else over</u>."

## COUNT I: BREACH OF COVENANT NOT TO COMPETE
## (JENKINS AND DELLA TORRE)

65. Paragraphs 1-64 are incorporated herein by reference.

66. The Jenkins Employee Agreement is a binding and enforceable contract, under which Union Home has fully performed.

67. The Della Torre Employee Agreement is a binding and enforceable contract, under which Union Home has fully performed.

68. Under the Jenkins Employee Agreement, Jenkins is restricted from competing with Union Home within 100 miles of his Union Home branch location in Grand Rapids, Michigan.

69. Under the Della Torre Employee Agreement, Della Torre is restricted from competing with Union Home within 100 miles of his Union Home branch location in Rehoboth Beach, Delaware.

70. Jenkins' employment with CrossCountry, in competition with Union Home, in the same or similar capacity and in the same market (Grand Rapids, Michigan) is a breach of the covenant not to compete in the Jenkins Employee Agreement with Union Home.

71. Della Torre's employment with CrossCountry, in competition with Union Home, in the same or similar capacity and in the same market (Rehoboth Beach, Delaware) is a breach of the covenant not to compete in the Della Torre Employee Agreement with Union Home.

72. Jenkins' breach of the covenant not to compete in the Jenkins Employee Agreement has caused and will, unless restrained, continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated, as agreed to by Jenkins in the Jenkins Employee Agreement.

73. Della Torre's breach of the covenant not to compete in the Della Torre Employee Agreement has caused and will, unless restrained, continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated, as agreed to by Della Torre in the Della Torre Employee Agreement.

**COUNT II:  BREACH OF NON-SOLICITATION COVENANT (JENKINS)**

74. Paragraphs 1-73 are incorporated herein by reference.

75. Jenkins' actions in regard to his coworkers and/or subordinates at Union Home, including Ms. Bosch and Ms. Kamer, both of whom have resigned from their employment with Union Home, breached his contractual obligation to refrain from directly or indirectly inducing Union Home's employees to leave their employment.

76. Jenkins' actions in regard to his coworkers and/or subordinates at Union Home breached his contractual obligation, as stated in the Jenkins Employee Agreement, to refrain from seeking to employ Union Home's employees.

77. The breaches by Jenkins of his obligation to refrain from soliciting Union Home's employees pursuant to the Jenkins Employee Agreement have caused and will continue to cause injury, loss, and damage to Union Home.

**COUNT III:  BREACH OF CONTRACTUAL DUTY OF LOYALTY (JENKINS)**

78. Paragraphs 1-77 are incorporated herein by reference.

79. While employed by Union Home, Jenkins owed a contractual duty of loyalty to Union Home.

80. Jenkins' employment with Union Home ended upon his resignation on or about November 28, 2020.

81. Prior to his resignation, Jenkins attempted to, and upon information and belief did successfully, facilitate the transfer of one or more Union Home employees to competitor CrossCountry, in violation of his contractual duty of loyalty.

82. Jenkins' actions breached his contractual duty of loyalty to Union Home.

83. Jenkins' breaches of his contractual duty of loyalty pursuant to the Jenkins Employee Agreement have caused injury, loss, and damage to Union Home and continuation of these breaches will result in immediate and irreparable injury, loss, and damage to Union Home.

**COUNT IV:  BREACH OF COMMON LAW DUTY OF LOYALTY (JENKINS)**

84. Paragraphs 1-83 are incorporated herein by reference.

85. While employed by Union Home, Jenkins owed a common law duty of loyalty to Union Home.

86. Jenkins' employment with Union Home ended upon his resignation on or about November 28, 2020.

87. Prior to his resignation, Jenkins attempted to, and upon information and belief did successfully, facilitate the transfer of Union Home's employees to competitor CrossCountry, in violation of his common law duty of loyalty.

88. Jenkins' actions breached his common law duty of loyalty to Union Home.

89. Jenkins' breaches of his common law duty of loyalty have caused injury, loss, and damage to Union Home.

## COUNT V: BREACH OF CONFIDENTIALITY COVENANTS (JENKINS)

90. Paragraphs 1-89 are incorporated herein by reference.

91. Jenkins sent himself Union Home confidential information immediately before resigning from his employment with Union Home and while he was negotiating his future employment with CrossCountry for the purpose of disclosing it to CrossCountry and/or using it to compete with Union Home.

92. Jenkins' actions breached his contractual confidentiality obligations to Union Home, as reflected in the Jenkins Employee Agreement, in multiple ways.

93. The breaches by Jenkins of his confidentiality obligations pursuant to the Jenkins Employment Agreement have caused and will continue to cause injury, loss and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

94. Paragraphs 1-93 are incorporated herein by reference.

95. As a direct and proximate result of Jenkins' conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

96. In the Jenkins Employee Agreement, Jenkins expressly acknowledged and agreed that a remedy at law for any breach or threatened breach of the provisions of the Jenkins Employee Agreement would be inadequate, thereby warranting issuance of injunctive relief.

97. Jenkins has and continues to willfully violate the Jenkins Employee Agreement including by accepting employment in the same area and in the same or similar capacity with CrossCountry, inducing his Union Home team members to resign from Union Home and go to work for CrossCountry, and by taking Union Home's confidential information immediately before resigning his employment with Union Home.

98. Without injunctive relief against Jenkins, he will continue to violate his restrictive covenants, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to Jenkins by entry of injunctive relief as Jenkins never had the right to violate his legal and contractual obligations to Union Home.

99. Injunctive relief is appropriate because protection and maintenance of Union Home's proprietary information and protection of its goodwill is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm associated with Jenkins' violation of the Jenkins Employee Agreement.

100. The public interest will not be harmed if an injunction is granted.

101. Given Jenkins' willful and deliberate violations of his obligations, any bond required to be posted by Union Home should be *de minimis*.

102. As a direct and proximate result of Della Torre's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

103. In the Della Torre Employee Agreement, Della Torre expressly acknowledged and agreed that a remedy at law for any breach or threatened breach of the provisions of the Della

Torre Employee Agreement would be inadequate, thereby warranting issuance of injunctive relief.

104. Della Torre has and continues to willfully violate the Della Torre Employee Agreement including by accepting employment in the same area and in the same or similar capacity with CrossCountry.

105. Without injunctive relief against Della Torre, he will continue to violate his restrictive covenants, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to Della Torre by entry of injunctive relief as Della Torre never had the right to violate his legal and contractual obligations to Union Home.

106. Injunctive relief is appropriate because protection and maintenance of Union Home's proprietary information and protection of its goodwill is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm associated with Della Torre's violation of the Della Torre Employee Agreement.

107. The public interest will not be harmed if an injunction is granted.

108. Given Della Torre's willful and deliberate violations of his obligations, any bond required to be posted by Union Home should be *de minimis*.

109. As CrossCountry is in active concert and/or participation with Jenkins and Delle Torre, it too should be enjoined.

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

A. Issue a preliminary and then permanent injunction against Jenkins requiring specific performance of the terms and conditions of the Jenkins Employee Agreement and prohibiting Jenkins from competing with Union Home or soliciting its employees in violation of the Jenkins Employee Agreement;

B.     Enter judgment in favor of Union Home and against Jenkins on all counts in an amount to be determined at trial and to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees;

C.     Issue a preliminary and then permanent injunction against Della Torre requiring specific performance of the terms and conditions of the Della Torre Employee Agreement and prohibiting Della Torre from competing with Union Home or soliciting its employees in violation of the Della Torre Employee Agreement;

D.     Enter judgment in favor of Union Home and against Della Torre on all counts in an amount to be determined at trial and to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees;

E.     Bind CrossCountry to the preliminary and then permanent injunctions described above as an entity in active concert or participation with Jenkins and Delle Torre; and

F.     Grant all other relief the Court deems just and proper in the circumstances.

## **VERIFICATION**

I, Jim Ferriter, the National Retail Sales Manager., verify under penalties of perjury that the foregoing facts and allegations are true and accurate to the best of my knowledge and belief.

Dated: December 2, 2020

_____
Jim Ferriter

Respectfully submitted,

*/s/ Jason T. Clagg*
Jason T. Clagg (0097303)
(jason.clagg@btlaw.com)
**BARNES & THORNBURG LLP**
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Phone: (260) 423-9440
Fax: (260) 424-8316

and

Paul N. Garinger (0079897)
(paul.garinger@btlaw.com)
**BARNES & THORNBURG LLP**
41 South High Street, Suite 3300
Columbus, OH 43215
Phone: (614) 628-0096
Fax: (614) 628-1433

ATTORNEYS FOR PLAINTIFF