**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | : | |
| Plaintiff. | : | |
| -vs- | : | CASE NO.: 1:20-CV-2690 |
| | : | JUDGE PAMELA A. BARKER |
| JASON JENKINS, et al., | : | |
| Defendants. | : | |

**PLAINTIFF'S ANSWER TO DEFENDANT JASON JENKINS' COUNTERCLAIMS**

Plaintiff / Counterclaim Defendant Union Home Mortgage Corp. ("Union Home"), by counsel, now responds to Defendant / Counterclaimant's Counterclaim. For ease of reference, the counterclaim allegations are set forth below, *verbatim*, with Union Home's responses immediately following each allegation.

**JURISDICTION AND VENUE**

**COUNTERCLAIM**

Counterclaim Plaintiff Jason Jenkins, for his Counterclaim, alleges as follows against Counterclaim Defendant Union Home Mortgage Corp. ("Union Home"):

PARTIES

1. Jenkins is a resident and citizen of Michigan and resides in Grand Rapids, Michigan.

**ANSWER:** On information and belief, Union Home admits the allegations in this paragraph.

2. Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

**ANSWER:** Union Home admits the allegations in this paragraph.

3. Jenkins is a former employee of Union Home.

**ANSWER:** Union Home admits the allegations in this paragraph.

## JURISDICTION

4. This Counterclaim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this Counterclaim action pursuant to 28 U.S.C. § 1332 as well as under the principles of pendant jurisdiction. Union Home has already submitted to the jurisdiction of this Court.

**ANSWER:** Union Home admits the Court has jurisdiction over the subject matter of this action and denies any remaining allegations in this paragraph.

5. If venue for Union Home's Complaint is proper, then venue for Jenkins' Counterclaim is proper pursuant to 28 U.S.C. § 1391.

**ANSWER:** Union Home admits that venue is proper in this Court and denies any remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

6. Union Home is approved by the Department of Housing and Urban Development ("HUD") to offer and originate FHA insured loans.

**ANSWER:** Union Home admits the allegations in this paragraph.

7. To qualify for approval, Union Home had to certify that it was in compliance with all HUD regulations for mortgagees, including any regulations for its branch offices.

**ANSWER:** Union Home admits the allegations in this paragraph.

8. Jenkins started working at Union Home in 2013.

**ANSWER:** Union Home admits the allegations in this paragraph.

9. Prior to working at Union Home, Jenkins had worked in the mortgage industry for sixteen years. Jenkins has always originated loans while working in the industry and had developed a significant network of realtor referral sources before he joined Union Home.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to Jenkins' activities eight or more years ago and therefore denies the allegations in this paragraph.

10. On January 27, 2020, Jenkins entered into an Employee Agreement with Union Home to serve as Senior Loan Officer and Branch Manager at Union Home's Grand Rapids, Michigan Office. (See Complaint, Ex. 1)

**ANSWER:** Union Home admits the allegations in this paragraph.

11. The Employee Agreement included a non-compete clause that prevented Jenkins from competing within one hundred miles of any branch office to which he was assigned prior to

October 30, 2022.

**ANSWER:** Union Home admits there is a non-compete clause in the Employee Agreement with a 100 mile restriction. Union Home denies that the description of the clause in this paragraph is completely accurate. Union Home denies any remaining allegations in this paragraph.

12. Moreover, the Employee Agreement states that "To the extent Employee resigns his/her employment prior to October 30, 2022, Employee agrees to be responsible for the resulting harm and expenses to the Company," indicating that the non-compete clause is about recovering expenses and not protecting Union Home from any unfair competition. (See Complaint, Ex. 1, ¶ 2).

**ANSWER:** Union Home denies the allegations contained in the foregoing paragraph. Answering further, the quoted language is not found in the "Restrictive Covenants" section of the Employee Agreement.

13. While working at Union Home, Jenkins would earn commissions on the loans he would originate for Union Home.

**ANSWER:** Union Home admits the allegations in this paragraph.

14. Prior to paying Jenkins these commissions, Union Home would deduct ten basis points of these commissions, pre-tax, to fund his marketing costs.

**ANSWER:** Union Home admits, as a benefit to Jenkins, he voluntarily chose to participate in a program that allowed him to set aside money, pre-tax, for purposes of marketing

himself as opposed to the branch or region. Union Home denies any remaining allegations in this paragraph.

15. Jenkins would then submit expense reports for reimbursement.

**ANSWER:** Union Home admits that Jenkins submitted expense reports during his tenure with the company. Union Home denies any remaining allegations in this paragraph.

16. Jenkins' branch office was very profitable prior to his leaving.

**ANSWER:** Union Home admits Jenkins' branch office was profitable before his resignation. Union Home denies any remaining allegations in this paragraph.

17. Within the last year, Jenkins noticed a lot of turnover in Union Home's underwriting and loan processing department.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to what Jenkins' "noticed" and therefore denies the allegations in this paragraph.

18. This turnover has resulted in longer processing times and frequent mistakes.

**ANSWER:** Union Home denies the allegations in this paragraph.

19. In turn, Union Home has routinely missed closing dates for the loans originated by Jenkins and others in his office.

**ANSWER:** Union Home denies the allegations in this paragraph. Answering further, acknowledged that certain closing dates may have been pushed back due to unprecedented volume industrywide, but denies believing this to be "routine."

20. These problems with loan processing were damaging Jenkins' business reputation and hurting his relationship with his referral sources.

**ANSWER:** Union Home denies the allegations in this paragraph.

21. Jenkins eventually resigned from Union Home on November 24, 2020 and joined CrossCountry Mortgage.

**ANSWER:** Union Home admits the allegations in this paragraph.

22. At the time Jenkin's left, Union Home was still withholding about $2000 of his commissions to cover marketing expenses.

**ANSWER:** Union Home admits, as a benefit to Jenkins, he voluntarily chose to participate in a program that allowed him to set aside money, pre-tax, for purposes of marketing himself as opposed to the branch or region. Union Home admits there was a balance in that account at the time of his abrupt resignation and that balance has since been paid to him. Union Home denies any remaining allegations in this paragraph.

## FIRST COUNTERCLAIM

Declaratory Judgment of Unenforceability

23. Jenkins hereby incorporates by reference Paragraphs 1 through 22 as if fully set forth and restated herein.

**ANSWER:** Union Home hereby incorporates by reference Answers 1 through 22 as if fully set forth and restated herein.

24. There currently exists an actual and justiciable controversy between Union Home and Jenkins as to whether the Employee Agreement between Union Home and Jenkins is enforceable.

**ANSWER:** Union Home admits Jenkins contends the Employee Agreement is unenforceable. Union Home denies this contention is supported by law or fact and asserts the agreement is fully enforceable. Union Home denies any remaining allegations in this paragraph.

25. This controversy will be terminated by this Court's declaration as to whether the contract is enforceable.

**ANSWER:** Union Home denies that this lawsuit will be terminated in its entirety following a declaration as to whether the contract is enforceable. Union Home admits that certain claims may be terminated by such a declaration.

26. To originate FHA-insured loans, a mortgagee must be approved by HUD.

**ANSWER:** Union Home admits the allegations in this paragraph.

27. As a condition of approval, the mortgagee must agree to comply with the provisions of the HUD regulations.

**ANSWER:** Union Home admits the allegations in this paragraph.

28. Under the HUD regulations, a mortgagee must pay all of the operating expenses of its branch offices and cannot require employees at branch offices to indemnify it for expenses.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home admits that it is in compliance with applicable regulations and denies any remaining allegations in this paragraph.

29. Union Home is a mortgagee approved by HUD to originate FHA-insured loans.

**ANSWER:** Union Home admits the allegations in this paragraph.

30. The office where Jenkins worked in Grand Rapids, Michigan was a branch office of Union Home and was approved to originate FHA-insured loans on Union Home's behalf.

**ANSWER:** Union Home admits the allegations in this paragraph.

31. Under HUD regulations, Union Home is required to pay all of the operating expenses of its branch offices.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home admits that it is in compliance with applicable regulations and denies any remaining allegations in this paragraph.

32. A branch office is consider a prohibited "net branch office" if any of the employees are required to pay the operating expenses of the office, are required to indemnify the

mortgagee for expenses, or are required to be named in contractual relationships with vendors, including advertising vendors.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home denies its branch offices constitute an impermissible "net branch office." Union Home denies any remaining allegations in this paragraph.

33. The purpose of these regulations is to prevent a mortgagee from using an office as a "net branch" to provide a potential revenue stream at little cost or risk to the lender by making the lender the financially responsible party for the office's obligations.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home denies its branch offices constitute an impermissible "net branch office." Union Home denies any remaining allegations in this paragraph.

34. Union Home did not pay all of the Grand Rapids Office's operating expenses as Jenkins was required to pay his own marketing expenses out of his commissions.

**ANSWER:** Union Home denies the allegations in this paragraph.

35. In paying these expenses, Jenkins entered into contracts with these advertising vendors under his own name.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to whether, "[i]n paying these expenses, Jenkins entered into contracts" with advertising vendors and therefore denies the same.

36. Moreover, the non-compete provision in Jenkins' Employee Agreement is intended to require Jenkins to indemnify Union Home for expenses if he were to resign prior to October 30, 2022.

**ANSWER:** Union Home denies the allegations in this paragraph. Answering further, the quoted language is not found in the "Restrictive Covenants" section of the Employee Agreement.

37. For these reasons, Union Home's operation of the Grand Rapids Office is in violation of HUD regulations.

**ANSWER:** Union Home denies the allegations in this paragraph.

38. Because Jenkins employment is tied to his work in the Grand Rapids Office, which is a prohibited "net branch" office under the HUD regulations, the Agreement is unenforceable.

**ANSWER:** Union Home denies the allegations in this paragraph.

39. Jenkins requests that this Court enter an order declaring that the Employee Agreement is unenforceable for violation of HUD regulations.

**ANSWER:** Union Home denies Jenkins is entitled to the relief described in this paragraph.

SECOND COUNTERCLAIM

Unjust Enrichment

40. Jenkins hereby incorporates by reference Paragraphs 1 through 39 as if fully set forth and restated herein.

**ANSWER:** Union Home hereby incorporates by reference Answers 1 through 39 as if fully set forth and restated herein.

41. Jenkins conferred a benefit on Union Home by paying the marketing expenses out of his commissions, which were expenses that Union Home was required to pay under HUD regulations.

**ANSWER:** Union Home denies the allegations in this paragraph.

42. Union Home was aware that Jenkins was paying these expenses.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to what Jenkins is referring to as "these expenses" and therefore denies the allegations in this paragraph.

43. Jenkins' payment of these expenses benefitted Union Home by generating additional revenue through new customers responding to the marketing.

**ANSWER:**  Union Home lacks sufficient knowledge or information to form a belief as to what Jenkins is referring to as "these expenses," nor can it say whether any such expenses benefitted Union Home, and therefore denies the allegations in this paragraph.

44. Union Home retained this benefit without reimbursing Jenkins the costs of these expenses.

**ANSWER:**  Union Home denies improperly retaining any benefit for which it should have reimbursed Jenkins.  Union Home denies any remaining allegations in this paragraph.

45. Jenkins is entitled to reimbursement of the marketing expenses he paid for Union Home's benefit.

**ANSWER:**  Union Home denies the allegations in this paragraph.

46. Jenkins has been harmed and has suffered damages from Union Home's actions as noted in paragraphs 41 through 44 above.

**ANSWER:**  Union Home denies the allegations in this paragraph.

### THIRD COUNTERCLAIM

Conversion

47. Jenkins hereby incorporates by reference Paragraph 1 through 46 as if fully set forth and restated herein.

**ANSWER:**  Union Home hereby incorporates by reference Answers 1 through 46 as if fully set forth and restated herein.

48. Jenkins had a right to his monthly commissions earned from the loans he originated.

**ANSWER:** Union Home admits the allegations in this paragraph.

49. When Jenkins left Union Home, Union Home was still withholding a portion of Jenkins commissions to reimburse him for future marketing expenses.

**ANSWER:** Union Home admits, as a benefit to Jenkins, he voluntarily chose to participate in a program that allowed him to set aside money, pre-tax, for purposes of marketing himself as opposed to the branch or region. Union Home admits there was a balance in that account at the time of his abrupt resignation and that balance has since been paid to him. Union Home denies any remaining allegations in this paragraph.

50. Union Home had no right to withhold this money as HUD regulations require Union Home to pay for all marketing expenses.

**ANSWER:** Union Home denies the allegations in this paragraph.

51. Jenkins is damaged in the amount of commissions still held by Union Home after his departure.

**ANSWER:** Union Home denies the allegations in this paragraph.

**Affirmative Defenses**

**First Defense**

Subject to a reasonable opportunity for investigation and discovery, Jenkins has failed to mitigate his alleged damages, if any.

**Second Defense**

Subject to a reasonable opportunity for investigation and discovery, Jenkins's claims are barred in whole or in part as a result of the applicable statutes of limitations.

**Third Defense**

Jenkins's claims for certain damages, including punitive damages, are barred by Union Home's good faith efforts to comply with the law.

**Fourth Defense**

Jenkins's claims for certain damages are barred or limited by the U.S. Constitution as well as other state and federal law.

**Fifth Defense**

Subject to a reasonable opportunity for investigation and discovery, Jenkins's claims are barred in whole or in part by the doctrine of waiver, laches, estoppel, and/or unclean hands.

**Sixth Defense**

Jenkins fails to state a claim upon which relief may be granted.

**Seventh Defense**

The HUD regulations and handbook terms Jenkins is suing under are not incorporated into the underlying agreement and provide no private right of action.

**Eighth Defense**

Union Home denies any allegations contained in Jenkins's counterclaims that were not specifically admitted herein.  Respectfully submitted,

- 15 -

/s/ Jason T. Clagg
Paul N. Garinger (0079897)
paul.garinger@btlaw.com
**BARNES & THORNBURG LLP**
41 South High Street, Suite 3300
Columbus, OH  43215
Phone: (614) 628-0096

and

Jason T. Clagg (0097303)
jason.clagg@btlaw.com
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, IN   46802
Telephone:   (260) 425-4646

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2021, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all counsel of record via the Court's ECF.

/s/ Jason Clagg