# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNION HOME MORTGAGE CORP.,** | : |
| **Plaintiff** | : |
| -vs- | : CASE NO.: 1:20-CV-2690 |
| | : JUDGE PAMELA A. BARKER |
| **JASON JENKINS, et al.,** | : |
| **Defendants** | : |

## PLAINTIFF'S ANSWER TO DEFENDANT DELLA TORRE'S COUNTERCLAIMS

Plaintiff / Counterclaim Defendant Union Home Mortgage Corp. ("Union Home"), by counsel, now responds to Defendant / Counterclaimant's Counterclaim. For ease of reference, the counterclaim allegations are set forth below, *verbatim*, with Union Home's responses immediately following each allegation.

## JURISDICTION AND VENUE

## COUNTERCLAIM

Counterclaim Plaintiff Joseph Della Torre, for his Counterclaim, alleges as follows against Counterclaim Defendant Union Home Mortgage Corp. ("Union Home"):

## PARTIES

1. Della Torre is a resident and citizen of Delaware and resides in Rehoboth Beach, Delaware.

**ANSWER:** On information and belief, Union Home admits the allegations in this paragraph.

2. Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

**ANSWER:** Union Home admits the allegations in this paragraph.

3. Della Torre is a former employee of Union Home.

**ANSWER:** Union Home admits the allegations in this paragraph.

## JURISDICTION

4. This Counterclaim arises under the Federal Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202. This Court has jurisdiction over the subject matter of this Counterclaim action pursuant to 28 U.S.C. § 1332 as well as under the principles of pendant jurisdiction. Union Home has already submitted to the jurisdiction of this Court.

**ANSWER:** Union Home admits the Court has jurisdiction over the subject matter of this action and denies any remaining allegations in this paragraph.

5. If venue for Union Home's Complaint is proper, then venue for Della Torre's Counterclaim is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

**ANSWER:** Union Home admits that venue is proper in this Court and denies any remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

6. Union Home is approved by the Department of Housing and Urban Development ("HUD") to offer and originate FHA insured loans.

**ANSWER:** Union Home admits the allegations in this paragraph.

7. To qualify for approval, Union Home had to certify that it is in compliance with all HUD regulations for mortgagees, including any regulations for its branch offices.

**ANSWER:** Union Home admits the allegations in this paragraph.

8. On February 28, 2018, Della Torre entered into an Employee Agreement with Union Home.

**ANSWER:** Union Home admits the allegations in this paragraph.

9. The Employee Agreement included a non-compete clause that prevented Della Torre from competing within one hundred miles of any branch office to which he was assigned prior to February 28, 2019.

**ANSWER:** Union Home admits there is a non-compete clause in the Employee Agreement with a 100 mile restriction. Union Home denies that the description of the clause in this paragraph is completely accurate. Union Home denies any remaining allegations in this paragraph.

10. While Della Torre's title at Union Home was as an Areas Sales Manager, he was essentially a loan officer and loan originator.

**ANSWER:** Union Home admits Della Torre was employed as its Area Sales Manager and his job duties included originating loans and functioning as a loan officer. Union Home denies any remaining allegations in this paragraph.

11. Prior to working for Union Home, Della Torre had worked for similar mortgage companies, including Acopia, Delaware National Bank, SunTrust Bank, and Fairway Mortgage in a loan officer and loan originator role and had developed a significant network of realtor referral sources before he joined Union Home.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to Della Torre's work and network development prior to working for Union Home and therefore denies the allegations in this paragraph.

12. He has worked in the same office in Rehoboth, Delaware since 2004, but the lease has always been covered by his employer at the time, which is common in the mortgage industry.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to where Della Torre's office location prior to working for Union Home, or the status of any leases for Della Torre's office location and therefore denies the allegations in this paragraph.

13. When Della Torre moved to Union Home, Union Home took over the office lease and paid the monthly rent and utilities.

**ANSWER:** Union Home denies it took over the office lease from another company. Further answering, Union Home admits it paid the monthly rent and utilities.

14. Della Torre's Rehoboth Office became a branch office for Union Home in accordance with HUD regulations.

**ANSWER:** Union Home admits the allegations in this paragraph.

15. Della Torre, however, was still responsible for all marketing expenses for the office, the desk rental expense for a desk at Coldwell Banker, and the cost of a billboard along the highway.

**ANSWER:** Union Home denies the allegations in this paragraph.

16. After Della Torre worked for Union Home for a year, he entered into a "Branch Loan Officer Employment Agreement Extension Addendum" on February 27, 2018.

**ANSWER:** Union Home admits the allegations in this paragraph.

17. The Addendum extended the non-competition portion of the Employee Agreement until August 28, 2021 and noted that the new date "is dated six months beyond the expiration of the Rehoboth Beach Delaware Office Lease expiration of 2/28/21."

**ANSWER:** Union Home admits that the Addendum, attached as Exhibit C to Union Home's Complaint, speaks for itself.

18. After Della Torre signed the Addendum, the loan processor he had been working with left Union Home and Della Torre was forced to work with a new and inexperienced loan processor.

**ANSWER:** Union Home denies the allegations in this paragraph.

19. The new loan processor was slow and sloppy, which routinely delayed loan settlements.

**ANSWER:** Union Home denies the allegations in this paragraph.

20. In some cases, the loan processor would miscalculate the costs due on the day of closing and the borrower, as a result, would not have a check with enough money to settle the loan. To prevent the closing from being further delayed, Della Torre was required to personally fund the shortfall in the amount due with a personal check.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to the generally referenced "some cases" in this paragraph and therefore denies the allegations in this paragraph.

21. As a result of the regular delays in closings, Della Torre's referral sources began to get frustrated and stopped referring work to Della Torre. In turn, Della Torre began to lose significant business.

**ANSWER:** Union Home denies regular delays in closings. Further Answering, Union Home lacks sufficient knowledge or information to form a belief as to the mindset of Della Torre's referral sources or any loss of business and therefore denies the allegations in this paragraph.

22. Della Torre regularly told Union Home about these processing problems and the effect on business, but Union Home failed to do anything in response.

**ANSWER:** Union Home denies the allegations in this paragraph.

23. In June, 2020, Della Torre told Union Home that he would leave unless the loan processing problems were fixed.

**ANSWER:** Union Home denies the allegations in this paragraph.

24. In late November, 2020, Della Torre resigned from his employment with Union Home and began working with CrossCountry Mortgage.

**ANSWER:** Union Home admits the allegations in this paragraph.

25. CrossCountry Mortgage has attempted to take over the lease for the Rehoboth Office.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to the attempted actions by CrossCountry Mortgage in regards to the lease for the Rehoboth Office and therefore denies this paragraph.

26. At the time he left Union Home, Della Torre was the only loan officer in Southern Delaware and the only other Union Home loan office was located in Newark, Delaware and one and one-half hours from Della Torre's office in Rehoboth.

**ANSWER:** Union Home admits Della Torre was the only loan officer at the Rehoboth Office at the time he left Union Home.  Union Home further admits it has an office in Newark, Delaware. Union Home denies the remaining allegations in this paragraph.

## FIRST COUNTERCLAIM

### Declaratory Judgment of Unenforceability

27. Della Torre hereby incorporates by reference Paragraphs 1 through 26 as if fully set forth and restated herein.

**ANSWER:** Union Home hereby incorporates by reference Answers 1 through 26 as if fully set forth and restated herein.

28. There currently exists an actual and justiciable controversy between Union Home and Della Torre as to whether the Employee Agreement and Addendum between Union Home and Della Torre are enforceable.

**ANSWER:** Union Home admits Della Torre contends the Employee Agreement is unenforceable. Union Home denies this contention is supported by law or fact and asserts the agreement is fully enforceable. Union Home denies any remaining allegations in this paragraph.

29. This controversy will be terminated by this Court's declaration as to whether the contract is enforceable.

**ANSWER:** Union Home denies that this lawsuit will be terminated in its entirety following a declaration as to whether the contract is enforceable. Union Home admits that certain claims may be terminated by such a declaration.

30. To originate FHA-insured loans, a mortgagee must be approved by HUD.

**ANSWER:** Union Home admits the allegations in this paragraph.

31. As a condition of approval, the mortgagee must agree to comply with the provisions of the HUD regulations.

**ANSWER:** Union Home admits the allegations in this paragraph.

32. Under the HUD regulations, a mortgagee must pay all of the operating expenses of its branch offices.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home admits that it is in compliance with applicable regulations and denies any remaining allegations in this paragraph.

33. Union Home is a mortgagee approved by HUD to originate FHA-insured loans.

**ANSWER:** Union Home admits the allegations in this paragraph.

34. Della Torre's Rehoboth Office in Delaware was a branch office of Union Home and was approved to originate FHA-insured loans on Union Home's behalf.

**ANSWER:** Union Home admits the allegations in this paragraph.

35. Under HUD regulations, Union Home is required to pay all of the operating expenses of its branch offices.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home admits that it is in compliance with applicable regulations and denies any remaining allegations in this paragraph.

DMS 18916011.1

36. A branch office is consider a prohibited "net branch office" if any of the employees are required to pay the operating expenses of the office or are required to be named in contractual relationships with vendors, including advertising vendors.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home denies its branch offices constitute an impermissible "net branch office." Union Home denies any remaining allegations in this paragraph.

37. The purpose of these regulations is to prevent a mortgagee from using an office as a "net branch" to provide a potential revenue stream at little cost to the lender by making the lender the financially responsible party for the office's obligations.

**ANSWER:** The allegations in this paragraph constitute a legal conclusion to which no response is required. To the extent a response was required, Union Home denies its branch offices constitute an impermissible "net branch office." Union Home denies any remaining allegations in this paragraph.

38. Union Home did not pay all of the Rehoboth Office's operating expenses as Della Torre was required to pay marketing expenses, the desk rental at Coldwell Banker and the cost of a billboard.

**ANSWER:** Union Home denies the allegations in this paragraph.

39. In paying these expenses, Della Torre entered into contracts with these advertising vendors under his own name.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to whether, "[i]n paying these expenses, Della Torre entered into contracts" with advertising vendors and therefore denies the same.

40. For these reasons, Union Home's operation of the Rehoboth Office is in violation of HUD regulations.

**ANSWER:** Union Home denies the allegations in this paragraph.

41. Because Della Torre's Employment Agreement is explicitly tied to the Rehoboth Office, which is a prohibited "net branch" office under the HUD regulations, the Agreement is unenforceable.

**ANSWER:** Union Home denies the allegations in this paragraph.

42. Moreover, the non-compete clause in Della Torre's Employee Agreement and the Addendum is expressly tied to the lease of the Rehoboth Office.

**ANSWER:** Union Home denies the allegations in this paragraph.

43. By extending his noncompetition period in accordance with the office lease term, Union Home is attempting to shift to Della Torre the obligations for the lease, which, if not expressly a violation of HUD regulations, is against the public policy of HUD and an attempt to create a prohibited net branch office.

**ANSWER:** Union Home denies the allegations in this paragraph.

44. Della Torre requests that this Court enter an order declaring that the Employee Agreement and the Addendum are unenforceable for violation of HUD regulations.

**ANSWER:** Union Home denies Della Torre is entitled to the relief described in this paragraph.

### SECOND COUNTERCLAIM
### Unjust Enrichment

45. Della Torre hereby incorporates by reference Paragraphs 1 through 44 as if fully set forth and restated herein.

**ANSWER:** Union Home hereby incorporates by reference Answers 1 through 44 as if fully set forth and restated herein.

46. Della Torre conferred a benefit on Union Home by paying the marketing expenses, desk rental for desk at Coldwell Banker, and billboard costs, which were expenses that Union Home was required to pay under HUD regulations.

**ANSWER:** Union Home denies the allegations in this paragraph.

47. Della Torre also conferred a benefit on Union Home by paying the shortfall in costs due at the closing to make sure that the costs were paid and the loans closed on time.

**ANSWER:** Union Home denies the allegations in this paragraph.

48. Union Home was aware that Della Torre was paying these expenses.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to what Della Torre is referring to as "these expenses" and therefore denies the allegations in this paragraph.

49. Della Torre's payment of these expenses benefitted Union Home by generating additional revenue through new customers responding to the marketing, additional referrals from Coldwell Banker and keeping loans at Union Home.

**ANSWER:** Union Home lacks sufficient knowledge or information to form a belief as to what Della Torre is referring to as "these expenses," nor can it say whether any such expenses benefitted Union Home, and therefore denies the allegations in this paragraph.

50. Union Home retained this benefit without reimbursing Della Torre the costs of these expenses.

**ANSWER:** Union Home denies improperly retaining any benefit for which it should have reimbursed Della Torre. Union Home denies any remaining allegations in this paragraph.

51. Della Torre is entitled to reimbursement of the marketing expenses, desk rental billboard costs, and closing costs he paid for Union Home's benefit.

**ANSWER:** Union Home denies the allegations in this paragraph.

52. Della Torre has been harmed and has suffered damages from Union Home's actions as noted in paragraphs 46 through 51 above.

**ANSWER:** Union Home denies the allegations in this paragraph.

DMS 18916011.1

## Affirmative Defenses

### First Defense

Subject to a reasonable opportunity for investigation and discovery, Della Torre has failed to mitigate his alleged damages, if any.

### Second Defense

Subject to a reasonable opportunity for investigation and discovery, Della Torre's claims are barred in whole or in part as a result of the applicable statutes of limitations.

### Third Defense

Della Torre's claims for certain damages, including punitive damages, are barred by Union Home's good faith efforts to comply with the law.

### Fourth Defense

Della Torre's claims for certain damages are barred or limited by the U.S. Constitution as well as other state and federal law.

### Fifth Defense

Subject to a reasonable opportunity for investigation and discovery, Della Torre's claims are barred in whole or in part by the doctrine of waiver, laches, estoppel, and/or unclean hands.

### Sixth Defense

Della Torre fails to state a claim upon which relief may be granted.

### Seventh Defense

The HUD regulations and handbook terms Della Torre is suing under are not incorporated into the underlying agreement and provide no private right of action.

### Eighth Defense

Union Home denies any allegations contained in Della Torre's counterclaims that were not specifically admitted herein.

- 15 -

                Respectfully submitted,


                /s/ Jason T Clagg
                Paul N. Garinger (0079897)
                paul.garinger@btlaw.com
                **BARNES & THORNBURG LLP**
                41 South High Street, Suite 3300
                Columbus, OH  43215
                Phone: (614) 628-0096

                and

                Jason T. Clagg (0097303)
                jason.clagg@btlaw.com
                **BARNES & THORNBURG LLP**
                888 South Harrison Street, Suite 600
                Fort Wayne, IN   46802
                Telephone:   (260) 425-4646

                *Counsel for Plaintiff*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2021, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all counsel of record via the Court's ECF.

/s/ Jason Clagg