## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Union Home Mortgage Corp.,         Case No. 1:20cv2690

              **Plaintiff,**

     -vs-                    **JUDGE PAMELA A. BARKER**

Jason Jenkins, et al.,              **MEMORANDUM   OPINION   AND ORDER**

             **Defendants**


Currently pending is Plaintiff Union Home Mortgage Corporation's Motion to Compel as to Non-Party CrossCountry Mortgage, LLC's Production of Documents in response to Subpoena.  (Doc. No. 22.)  Non-party Cross-Country Mortgage, LLC filed a Brief in Opposition on March 3, 2021, to which Plaintiff replied on March 10, 2021.  (Doc. Nos. 23, 24.)  For the following reasons, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, as set forth herein.

**I.    Background**

On December 2, 2020, Plaintiff Union Home Mortgage Corp. ("Union Home") filed a Verified Complaint for Preliminary and Permanent Injunctive Relief in this Court against Defendants Jason Jenkins and Joseph Della Torre.  (Doc. No. 1.)  Therein, Union Home sets forth the following factual allegations.  Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.  (*Id*. at ¶ 1.)  In February 2018, Della Torre signed an employment agreement with Union Home pursuant to which he became an Area Sales Manager in Union Home's Rehoboth Beach, Delaware branch office.  (*Id.* at ¶ 31.)  In January 2020, Jenkins signed an employment agreement with Union Home pursuant to which he became a Senior Loan Officer and Branch Manager in Union Home's Grand Rapids, Michigan branch office.  (*Id*. at ¶ 16.)

Among other things, these employment agreements contained non-competition, non-solicitation, and confidentiality provisions.  (*Id*. at ¶¶ 20-22; 35-37.)  *See also* Doc. Nos. 1-1, 1-2.

On November 24, 2020, Della Torre resigned from his employment with Union Home.  (*Id*. at ¶ 56.)  Shortly thereafter, Union Home was advised by CrossCountry Mortgage that Della Torre was now working for CrossCountry and that CrossCountry wanted to assume the lease on Union Home's Rehoboth Beach, Delaware location so that Della Torre could work for CrossCountry in that location.  (*Id*. at ¶ 57.)  CrossCountry Mortgage is a direct competitor of Union Home.  (*Id*. at ¶ 58.)

Around the same time period, on November 28, 2020, Jenkins resigned from his employment with Union Home.  (*Id*. at ¶ 47.)  Immediately prior to his resignation, Jenkins sent himself, through his personal email account, Union Home's confidential information, including but not limited to confidential information about Union Home's business practices, customers, prospective customers, and referral sources.  (*Id*. at ¶ 48.)  Jenkins advised Union Home that he intended to immediately begin working for CrossCountry Mortgage as a Senior Loan Officer and/or Branch Manager in or around Grand Rapids, Michigan.  (*Id*. at ¶ 50.)

In addition, several members of Jenkins' team at Union Home's Grand Rapids office (including Loan Officer Becky Bosch and Production Assistant Julie Kamer) both submitted their resignations from Union Home on November 27, 2020.  (*Id*. at ¶ 62.)  Union Home alleges that Jenkins improperly solicited Bosch and Kamer to join him at CrossCountry.  (*Id*. at ¶¶ 63, 75-77.)

In the Verified Complaint, Union Home asserts claims against Jenkins and Della Torre for breach of the non-competition provisions of their employment agreements.  (*Id*. at ¶¶ 65-73.)  In addition, Union Home asserts claims against Jenkins for breach of the non-solicitation and confidentiality provisions of his employment agreement, as well as claims for breach of Jenkins'

contractual and common law duties of loyalty.  (*Id.* at ¶¶ 74-93.)  Union Home seeks preliminary and

permanent injunctive relief against both Defendants, as well as damages and attorneys' fees.  (*Id.* at

pp. 13-16.)

On the same day it filed its Verified Complaint, Union Home filed a Motion for Preliminary

Injunction and Brief in Support.  (Doc. Nos. 3, 4.)  Union then filed a "Motion for Leave to Serve

Limited, Expedited Discovery" on Jenkins, Della Torre, and Defendants' new employer, non-

CrossCountry Mortgage.  (Doc. No. 6.)  Therein, Union Home asserted that expedited discovery was

necessary in order "to determine the extent of and to mitigate the irreparable harm caused by

Defendants' continued breaches of the Agreements, and to prepare and present its Motion for

Preliminary Injunction."  (*Id.* at p. 3.)  Union Home sought permission to serve no more than ten

interrogatories, ten requests for admissions, and ten requests for production of documents on

Defendants Jenkins and Della Torre.  (*Id.*)  With regard to CrossCountry, Union Home represented

as follows:

> *** Union Home intends to serve Defendants' new employer, CrossCountry, with no
> more than ten (10) requests for production (the "Non-Party Discovery").  **The Non-
> Party Discovery will be narrowly tailored and will not be burdensome on
> CrossCountry.**  Union Home requests this Court issue an Order requiring
> CrossCountry to respond to the Non-Party Discovery, in full and without evasion,
> within fourteen (14) days of the date of service of the Non-Party Discovery.

(*Id.* at p. 3) (emphasis added).

On December 31, 2020, Defendants filed a Motion for Extension of Time to File Response to

Union Home's Motions for Preliminary Injunction and for Expedited Discovery.[1]  (Doc. No. 13.)

Defendants did not object to Union Home's request but asked that they likewise be permitted to serve

---

[1] On that same date, Defendants also filed Answers and Counterclaims against Union Home.  (Doc. Nos. 11, 12.)

ten interrogatories, ten requests for admission, and ten requests for production of documents on Union Home in advance of the anticipated preliminary injunction hearing.  (*Id.* at p. 2.)  Union Home filed a response, in which it voiced no objection to Defendants' request.  (Doc. No. 14.)  Union Home also stated that it intended to conduct depositions of Defendants Jenkins and Della Torre and thereafter submit supplemental materials in support of its Motion for Preliminary Injunction.  (*Id.* at p. 2.)

On January 19, 2021, this Court held a telephonic status conference with counsel.  At that time, the Court granted Union Home's Motion for Leave to Conduct Expedited Discovery with respect to both Defendants and non-party CrossCountry Mortgage, as follows:

> Plaintiff may serve 10 interrogatories, 10 requests for admissions, and 10 requests for production of documents upon each named defendant, and may issue a subpoena to a non-party, Cross Country Mortgage, that requests the production of 10 documents, and may take the depositions of both defendants. Defendants together may issue 10 interrogatories, 10 requests for admissions and 10 requests for production of documents upon Plaintiff, and if desired, may take depositions of two individuals, the identities of which have yet to be determined. Service of the written discovery permitted shall be completed by January 18, 2021 and responses thereto are due within 14 days of service, or by February 1, 2021. The depositions permitted shall be completed by February 22, 2021. Plaintiff must file any supplement to its Motion for Preliminary Injunction (doc. no. 3) by March 8, 2021, Defendants must file their opposition by March 22, 2021, and Plaintiff must file its reply by March 29, 2021. A hearing on Plaintiff's Motion for Preliminary Injunction is set for April 19, 2021 at 9:00 a.m. in Courtroom 16A.

*See* Minute Order dated January 19, 2021.  Subsequently, upon motion of the parties, the deposition and briefing deadlines were extended by one week.  (Doc. No. 21.)  The hearing date for the preliminary injunction motion remained unchanged.  (*Id.*)  A Stipulated Protective Order was entered on February 2, 2021.  (Doc. No. 18.)

Meanwhile, immediately after the status conference with the Court on January 19, 2021, Union Home served a subpoena on CrossCountry Mortgage in which it requested the production of

ten categories of documents.[2]  (Doc. No. 22 at p. 2; Doc. No. 22-1.)  Several of these document

requests were quite broad.[3]  On February 1, 2021, CrossCountry served a response to Union Home's

subpoena, in which it raised numerous, lengthy objections.  (Doc. No. 22-1.)  On February 3, 2021,

CrossCountry produced eight documents, consisting of CrossCountry's offer letters, employment

agreements, signing bonus agreements, and confidential information acknowledgements with respect

to Defendants Jenkins and Della Torre.  (Doc. No. 23 at p. 5.)

On February 9, 2021, Union Home sent CrossCountry a deficiency letter in which it demanded

that CrossCountry immediately remedy alleged deficiencies in its response and make a "complete

production of documents" within twenty-four hours.  (Doc. No. 22-2.)  CrossCountry declined to do

so, arguing that "each and every request in the subpoena casts an unreasonably wide net that would

not be appropriate for ordinary discovery, let alone expedited discovery to a third-party."  (Doc. No.

22-3.)

On February 10, 2021, Union Home sent an email to CrossCountry in which it offered to

narrow the requested documents to the following:

> **Request Nos. 1 and 2**: We request correspondence, email, text messages, or social
> media messages sent to or from Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri
> Uhrinek, and/or Olena Tikiob from July 1, 2020 through the date each individual
> joined CrossCountry as employees.

---

[2] Union Home did not attach the actual Subpoena to its Motion to Compel, instead attaching only CrossCountry's
Objections to that Subpoena.  Although the Objections do restate the original discovery requests contained in the
Subpoena, the Objections do not restate the definitions used in that Subpoena, thus depriving the Court of a full record
on which to evaluate Union Home's requests.  In the future, Union Home is directed to attach original discovery requests
to any motions or briefing relating to discovery disputes.

[3] For example, Union Home initially requested that CrossCountry produce "[a]ll correspondence, email, text messages,
and social media messages since July 1, 2020 between *any* CrossCountry representative and *any then-current employee
of Union Home*, including but not limited to Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek, and/or
Olena Tikiob."  (Doc. No. 22-1 at p. 6) (emphasis added).

**Request No. 3**: We request non-privileged correspondence to or from Jenkins or Della Torre from July 1, 2020 to the present regarding or related to any restrictive covenants between Union Home and its employees.

**Request No. 4:** We request any documents or correspondence sent to or brought to CrossCountry from Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek and/or Olena Tikiob that reference or identify customers, prospective customers or referral sources that predate each individuals' [sic] employment with CrossCountry.

**Request No. 7:** We request calendars or day planners, electronic or otherwise, that reflect meetings or conferences with Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek, and/or Olena Tikiob since July 1, 2020 but prior to each of their first day of employment with CrossCountry.

**Request No. 9**: We request Jenkins and Della Torre's "pipelines," which is a commonly used term in the industry that includes lists of customers or prospective customers.  Jenkins and Della Torre have informed us that this information is in CrossCountry's custody and control to produce.

**Request No. 10**:  We request documents showing loans closed by Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek and Olena Tikiob since joining CrossCountry.  Your firm reviewed and proposed changes to the Stipulated Protective Order that was entered by the Court, so confidentiality should not be an issue.  We also would agree to allow redactions of everything except the customer name and address, as the identity and location of customers served by Jenkins and Della Torre and their teams goes directly to the breach of confidentiality and non-compete terms in the subject employment agreements at issue before the Court.

(Doc. No. 22-4.)  Counsel for Union Home and CrossCountry then held a meet and confer phone call on February 11, 2021 but were unable to resolve their differences.  (Doc. No. 22 at pp. 2-3.)

On February 17, 2021, Union Home filed the instant Motion to Compel, in which it asked the Court to compel a "complete production of documents" in response to the January 19, 2021 subpoena within seven (7) days.  (Doc. No. 22.)  CrossCountry filed a Brief in Opposition on March 3, 2021, to which Union Home replied on March 10, 2021.[4]  (Doc. Nos. 23, 24.)

---

[4] In addition, on March 15, 2021, Union Home filed a Supplemental Memorandum in support of its Motion for Preliminary Injunction.  (Doc. No. 26.)  Therein, Union Home notes that the parties had exchanged written discovery and Union Home had taken the depositions of Defendants Della Torre and Jenkins on February 23 and 24, 2021, respectively.  (*Id*.)

## II.   Legal Standard

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...."  Fed. R. Civ. P. 26(b)(1).   "Relevance is construed very broadly for discovery purposes."  *Doe v. Ohio State Univ.*, 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018) (citations omitted)).  The concept of relevance, however, is not unlimited.  *Averett v. Honda of Am. Mfg., Inc.*, 2009 WL 799638 at *2 (S.D. Ohio March 24, 2009).  While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  *See also Gallagher v. Anthony*, 2016 WL 2997599 at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas.  Under Rule 45, parties may command a nonparty to, among other things, testify in deposition and/or produce documents.  Fed. R. Civ. P. 45(a)(1).  Rule 45 further provides that "the issuing court must quash or modify a subpoena that ...requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [ ] subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  *See United States v. Tenn. Walking Horse Breeders' and Exhibitors Ass'n*, 727 Fed. Appx 119, 123 (6th Cir. 2018).  Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26."  *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio

2011) (citation omitted).  Under that Rule, district courts may take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

The instant Motion to Compel involves expedited discovery.  Fed. R. Civ. P. 26(d) permits a Court to exercise discretion in allowing expedited discovery.   Courts within this Circuit have applied a good cause standard in determining the necessity and scope of expedited discovery.  *See, e.g., Lemkin v. Bell's Precision Grinding*, 2009 WL 1542731 at * 1 (S.D. Ohio June 2, 2009) (collecting cases).  The party seeking such discovery bears the burden of demonstrating good cause.  *See 5ifth Element Creative, LLC v. Kirsch*, 2010 WL 4102907 at *2 (E.D. Ky. Oct. 18, 2010); *Lemkin*, 2009 WL 1542731 at * 1.  Good cause may be established by demonstrating that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Russell v. Lumpkin*, 2010 WL 1882139 at * 2 (S.D. Ohio May 11, 2010).  *See also Lemkin*, 2009 WL 1542731 at * 1.  Where information is necessary to support a motion for a preliminary injunction, this need can constitute good cause for expedited discovery.  *Kirsch,* 2010 WL 4102907 at * 2.  *See also Russell*, 2010 WL 1882139 at * 2.  However, because "expedited discovery is not the norm," "such requests must be narrowly tailored to obtain information relevant to the determination of the preliminary injunction." *Kirsch,* 2010 WL 4102907 at * 2.  *See also Ky. CVS*

8

*Pharm., LLC v. McKinney*, 2013 WL 1644903 at *1 (E.D. Ky. April 16, 2013); *Hydropartners, LLC v. Econergy Energy Generation Ltd.*, 2008 WL 1775411 at * 2 (N.D. Ohio April 16, 2008).

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.,* 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  Indeed, "'[i]t is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

## III.  Analysis

Union Home argues that its Motion to Compel should be granted because each of the categories of documents sought from CrossCountry is "relevant to the Union Home's claims that are pending as part of the Motion for Preliminary Injunction—breaches of non-competition, non-solicitation, and confidentiality provisions." (Doc. No. 22 at p. 5.)  Specifically, Union Home asserts that its Requests properly seek documents relating to whether Defendants (1) are actively using Union Home's confidential information; (2) solicited Union Home team members; and (3) are currently competing with Union Home in the market and geographic areas prohibited by their employment agreements.  (*Id.*)  Union Home asserts that its requests are narrow and limited in nature, noting that each request pertains to, at most, only six individuals during a limited time frame.  (*Id.*)

In response, CrossCountry argues that Union Home's document requests "are in no way narrowly tailored to establishing its purported need for a preliminary injunction, and instead ask CrossCountry to search for and produce a massively broad scope of documents." (Doc. No. 23 at p. 1.)  CrossCountry asserts that Union Home's requested discovery improperly relates to past events rather than to whether there is a "present danger" that Defendants are engaged in ongoing violations in a way that is causing irreparable harm.  (*Id.* at pp. 2, 8.)  CrossCountry further objects to Union

Home's attempts to obtain documents relating to Cheri Uhrinek and Olena Tikiob, noting that Ms. Uhrinek is not employed by CrossCountry and Ms. Tikiob is a sales assistant and, therefore, does not originate or close loans. (*Id*. at p. 10.) CrossCountry also argues that Union Home's requests are overly broad and, further, that many of the documents sought are available directly from Defendants. (*Id*. at p. 12.) Finally, CrossCountry particularly objects to Union Home's requests that CrossCountry produce the personal emails, text messages, and social media messages of its employees, arguing that such documents are not within CrossCountry's possession, custody or control. (*Id*. at pp. 12-14.)

The Court will address the parties' arguments in the context of the categories of requested documents, below.[5]

### A.    Request Nos. 1, 2 and 7

In Request Nos. 1 and 2, Union Home seeks the following documents: "Correspondence, email, text messages, or social media messages sent to or from Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek, and/or Olena Tikiob from July 1, 2020 through the date each individual joined CrossCountry as employees." (Doc. No. 22 at p.4.)

The Court finds that these Requests are overbroad and not narrowly tailored to resolution of Union Home's Motion for Preliminary Injunction. As CrossCountry correctly notes, these Requests seek a broad array of communications sent to or from six separate individuals over a five-month time period, without any limitation to any particular subject matter. While some of these communications might contain relevant information, the Requests themselves are written in extremely broad terms and would likely capture a host of communications with no relevance whatsoever to whether Jenkins

---

[5] In this regard, the Court examines the narrowed discovery requests set forth in Union Home's Motion (Doc. No. 22 at p. 4), rather than the original requests for production set forth in the Subpoena.

and DellaTorre breached their respective employment agreements.  Moreover, CrossCountry asserts (and Union Home does not contest) that Ms. Uhrinek is not employed by CrossCountry and Ms. Tikiob does not originate or close loans.  Union Home offers absolutely no justification for broadly seeking all correspondence, emails, text messages, and social media messages sent to or from these individuals.

Request No. 7 suffers from the same deficiencies.  That Request seeks "calendars or day planners, electronic or otherwise, that reflect meetings or conferences with Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek, and/or Olena Tikiob since July 1, 2020 but prior to each of their first day of employment with CrossCountry."  (Doc. No. 22 at p. 4.)  Again, this Request fails to contain any limitation as to any particular subject matter that may be relevant to Union Home's Motion for Preliminary Injunction.  Nor does this Request, on its face, limit the requested documents to calendar entries reflecting meetings between these individuals and CrossCountry, which might conceivably be relevant, at least with respect to Defendants Jenkins and Della Torre.  Rather, Union Home broadly attempts to obtain all calendar entries reflecting any and all meetings involving these individuals over a five-month time period.  As written, this Request is not narrowly tailored to the issues presented by its Motion for Preliminary Injunction.  To the contrary, the Court finds that this Request (as well as Request Nos. 1 and 2) is best characterized as a fishing expedition.  This is not appropriate in any context but most certainly not in the context of the expedited discovery that was authorized by this Court.

Accordingly, Union Home's Motion to Compel responses to Request Nos. 1, 2 and 7 is denied.

**B.     Request Nos. 4, 9 and 10**

11

Request Numbers 4, 9 and 10 are targeted towards discovering documents relating to Jenkins' and Della Torre's customers and prospective customers, customer "pipelines," and loans. Specifically, Request No. 4 seeks "any documents or correspondence sent to or brought to CrossCountry from Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek and/or Olena Tikiob that reference or identify customers, prospective customers or referral sources that predate each individuals' [sic] employment with CrossCountry." (Doc. No. 22 at p. 4.) Request No. 9 seeks "Jenkins and Della Torre's 'pipelines,' which is a commonly used term in the industry that includes lists of customers or prospective customers." (*Id*.) And, finally, Request No. 10 seeks "documents showing loans closed by Jenkins, Della Torre, Becky Bosch, Julie Kamer, Cheri Uhrinek and Olena Tikiob since joining CrossCountry." (*Id.*)

As an initial matter, the Court finds these requests overbroad to the extent they seek documents relating to Cheri Uhrinek and Olena Tikiob. As noted above, it does not appear to be disputed that Ms. Uhrinek is not employed at CrossCountry, or that Ms. Tikiob is not involved in originating or closing loans. Thus, the Court finds that Union Home has not demonstrated good cause to obtain the requested expedited discovery regarding Ms. Uhrinek or Ms. Tikiob in Request Nos. 4 and 10 and any reference to those individuals in those Requests is stricken.

However, with regard to Defendant Jenkins, the Court finds that Request Nos. 4, 9, and 10 are both relevant and narrowly tailored to the issues presented by Union Home's Motion for Preliminary Injunction. As set forth *supra*, Union Home alleges that Jenkins breached his employment agreement with Union Home when he sent himself, through his personal email account, Union Home's confidential information (including but not limited to confidential information about Union Home's business practices, customers, prospective customers, and referral sources)

12

immediately prior to his resignation.  (Doc. No. 1 at ¶ 48.)  Union Home further alleges that Jenkins is presently using its confidential information to compete with Union Home.  (*Id.* at ¶¶ 53, 54, 55, 66-73, 91-93.)  Union Home asserts breach of contract claims against Jenkins based on his alleged violation of the non-competition, non-solicitation, and confidentiality provisions of his employment agreement.  (*Id.* at ¶¶ 65-93.)  In addition, Union Home seeks a preliminary injunction against Jenkins on the grounds that he "has and continues to willfully violate the Jenkins Employee Agreement including by accepting employment in the same area and in the same or similar capacity with CrossCountry, inducing his Union Home team members to resign from Union Home and go to work for CrossCountry, and by taking Union Home's confidential information immediately before resigning his employment with Union Home."  (*Id.* at ¶ 97.)

The Court finds that the documents sought in Requests Nos. 4, 9 and 10 are relevant to whether Union Home is likely to succeed on the merits of these claims against Defendant Jenkins. Specifically, the Court finds that the requested documents are discoverable because they may show whether and to what extent Jenkins is using Union Home's confidential information to compete with Union Home in the market and/or geographical area covered by his January 2020 employment agreement. In this regard, the Court rejects CrossCountry's argument that the Requests are inappropriate because they do not directly relate to whether there is a "present danger" that Jenkins is engaged in an ongoing violation of his employment agreement.  The Court is not convinced that, as a matter of law, expedited discovery in the context of a preliminary injunction hearing is necessarily limited to information directly relating to whether there is "present danger" of ongoing

13

violations. CrossCountry cites no binding Sixth Circuit authority to this effect[6] and the Court is aware of none. Rather, the Court finds that the expedited discovery requests herein may be appropriate to the extent they seek "information relevant to the determination of the preliminary injunction." *See, e.g., McKinney,* 2013 WL 1644903 at * 1; *MRP, Inc. v. Moreman*, 2011 WL 61177 at * 2 (W.D. Ky. Jan. 7, 2011). This would necessarily include whether Union Home is likely to succeed on the merits of its claims regarding Jenkins' alleged violations of the non-competition, non-solicitation, and/or confidentiality provisions of his January 2020 employment agreement. As noted *supra*, the Court finds that Requests 4, 9 and 10 seek documents relevant to this issue and are, therefore, appropriate under the circumstances presented.[7]

The Court further finds that, with regard to Jenkins, Request Nos. 4, 9, and 10 are narrowly tailored because they are limited to the specific issues discussed above and CrossCountry has not demonstrated that it would be unduly burdensome for it to respond to these particular Requests. Union Home alleges that Jenkins joined CrossCountry on November 28, 2020 and has closed 35 loans between that date and February 17, 2021. (Doc. No. 22 at p. 8.) CrossCountry has not demonstrated that it would be unduly burdensome for it to produce (subject to the Stipulated Protective Order) the limited information sought by Union Home with respect to these loans. Nor has CrossCountry sufficiently demonstrated that it would be unduly burdensome for it to produce documents relating

---

[6] The only authority cited by CrossCountry for this proposition of law is an unreported decision from the Western District of Kentucky. *See Allstate Insurance Co. v. Jewell,* 2017 WL 9728236 at * 2 (W.D. Ky. Aug. 25, 2017). This decision is not binding on this Court. Moreover, the discussion of this issue in *Jewell* is quite limited and not reliant on any Sixth Circuit authority.

[7] In any event, the Court finds that Request Numbers 4 and 9 are, in fact, relevant to whether there is a "present danger" of ongoing violations. As noted above, these Requests seek information about the customers and/or potential customers that Jenkins brought to CrossCountry when he began his employment there as well as the customers that are currently in his "pipeline." These Requests, then, seek information relevant to whether there is a present danger that Jenkins may be misusing Union Home's confidential business information in violation of his employment agreement.

14

to Jenkins' customer "pipelines" or documents sent or brought to CrossCountry by Jenkins that reference or identify customers, potential customers, or referral sources that predate his employment with CrossCountry.

With regard to Defendant Della Torre, Union Home alleges that Della Torre is "now competing with Union Home in the same market in which he worked for Union Home and clearly within one hundred miles of the Union Home office in Rehoboth Beach, Delaware at which he worked." (Doc. No. 1 at ¶ 60.) The Complaint alleges a breach of contract claim against Della Torre based on his violation of the non-competition provision of his employment agreement but (unlike with Jenkins) does not allege violations of either the non-solicitation or confidentiality provisions. (*Id*. at ¶¶ 66-73.) Union Home also seeks a preliminary injunction against Della Torre on the grounds that he "has and continues to willfully violate the Della Torre employment agreement including by accepting employment in the same area and in the same or similar capacity with CrossCountry." (*Id*. at ¶ 104.)

CrossCountry alleges generally that Union Home's discovery requests are overly broad as to Della Torre in light of the more limited nature of the claims against him. (Doc. No. 23 at p. 10.) To a certain extent, the Court agrees. As Union Home does not allege that Della Torre took any of Union Home's confidential information with him when he resigned, the Court finds that Union Home has not established good cause for Request No. 4 with regard to Della Torre; i.e, for its request that CrossCountry produce any documents or correspondence sent to or brought to CrossCountry from Della Torre that reference or identify customers, potential customers, or referral sources that predate his employment at CrossCountry. However, the Court finds that Union Home has established good cause for Request Nos. 9 and 10, as applied to Della Torre. Specifically, the Court agrees with Union

Home that the documents requested in Request Nos. 9 and 10 regarding Della Torre's customer "pipelines" and closed loans are relevant to whether Della Torre is competing against Union Home in the market and/or geographic area covered by his February 2018 employment agreement.

The Court further finds that, with regard to Della Torre, Request Nos. 9 and 10 are narrowly tailored because they are limited to the specific issue discussed above and CrossCountry has not demonstrated that it would be unduly burdensome for it to respond to these particular Requests. Union Home alleges that Della Torre joined CrossCountry on November 24, 2020 and has closed 10 loans between that date and February 17, 2021.  (Doc. No. 22 at p. 8.)  CrossCountry has not demonstrated that it would be unduly burdensome for it to produce (subject to the Stipulated Protective Order) the limited information sought by Union Home with respect to these loans.  Nor has CrossCountry sufficiently demonstrated that it would be unduly burdensome for it to produce documents that relate to Della Torre's customer "pipelines."

CrossCountry nonetheless argues that Union Home's Motion should be denied because many of the documents sought are available directly from Jenkins and Della Torre.  (Doc. No. 23 at p. 12.) The Court disagrees.  The Court is not persuaded that Jenkins and Della Torre have the ability and/or authority to produce documents responsive to Request Nos. 9 and 10, i.e., documents relating to (1) their current customer "pipelines;" and (2) loans that they have closed since joining CrossCountry. Moreover, with regard to Request No. 4, Union Home asserts that Jenkins has indicated that he deleted certain emails between himself and CrossCountry that could potentially be responsive to this Request.  Accordingly, the Court rejects CrossCountry's argument that Union Home's Motion should be denied on this basis.

16

The Court also notes that Request Nos 4 and 10 seek documents relating to Ms. Bosch and Ms. Kamer.  Although neither Ms. Bosch nor Ms. Kamer are named as Defendants in this action, the Court finds that Union Home has established good cause for its Requests for documents pertaining to these individuals.  During his recent deposition, Jenkins testified that he and "his team" (which Union Home alleges included both Ms. Bosch and Ms. Kamer) identified certain documents in advance of their move to CrossCountry and then transmitted those documents so that they could use them while working for CrossCountry.  According to Jenkins, these documents included five to eight Excel spreadsheets that included a listing of certain customer contact information and referral sources used to "track leads and that sort of stuff." (Deposition of Jason Jenkins (Doc. No. 26-2) at Tr. 24-27.)  Given Jenkins' testimony, the Court finds that Union Home has established good cause for requesting documents and correspondence sent or brought to CrossCountry by Bosch and Kamer that reference or identify customers, prospective customers, or referral sources that predate Bosch's and Kamer's employment with CrossCountry.  The Court also finds that Union Home has established good cause for requesting documents showing loans closed by Bosch and Kamer since joining CrossCountry, subject to the terms of the Stipulated Protective Order entered in this matter.

Finally, the Court considers CrossCountry's objection to Union Home's definition of the term "document," which apparently includes email messages as well as "websites, blogs, text messages, social media postings (including Facebook and LinkedIn), [and] 'Tweets' via Twitter."  (Doc. No. 22-1 at p. 4.)  CrossCountry objects that such documents are not within CrossCountry's possession, custody or control and argues that requiring their production would raise "serious privacy concerns." (Doc. No. 23 at pp. 12-14.)

17

In response, Union Home argues that CrossCountry "certainly possesses emails to or from CrossCountry email accounts and must produce any such responsive emails." (Doc. No. 24 at p. 11.) Union Home further asserts that, at a minimum, CrossCountry should be ordered to formally request that its employees search for and provide for production all relevant emails in their personal email accounts which are responsive to the Requests at issue. (*Id*.) With regard to text messages and social media messages, Union Home argues as follows:

> In this case, Defendant Jenkins produced a video text message sent to him by a CrossCountry employee recruiting him to CrossCountry and has acknowledged responding. CrossCountry employees are therefore using personal cell phones for business purposes. Any text messages exchanged with the specified individuals in the period immediately before they left Union Home to go to CrossCountry would be for business purposes.

> CrossCountry does not argue, nor is there a reasoned basis, to treat social media messages differently than text messages. CrossCountry should be ordered to produce its employees' social media messages sent to the specified individuals who left Union Home to work for CrossCountry as business-related messages. Any contrary holding would allow CrossCountry to permanently shield from discovery its communications simply by instructing employees to engage in them via text message or social media message from their personal phones.

(*Id*. at p. 12.)

A party may discover documents within another party's "possession, custody, or control." Fed. R. Civ. P. 34(a). "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co*., 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original). *See also State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*, 2020 WL 7056039 at * 5 (E. D. Mich. Dec. 2, 2020); *Duracore Pty Ltd. v. Applied Concrete Tech., Inc*., 2015 WL 4750936, at *2 (W.D. Ky. Aug. 11, 2015) (quoting *In re Bankers Trust Co*., 61 F.3d at 469). The burden of establishing control over the documents

sought is on the party seeking production. *See State Farm Mutual Automobile Ins. Co*., 2020 WL 7056039 at * 5; *Robert Bosch LLC v. Snap-On Inc.,* 2013 WL 823330 at *1 (E.D. Mich. Mar. 6, 2013) (citing *United States v. Int'l Union of Petroleum & Indus. Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)).  "While Federal courts are divided on what circumstances render an employee's personal device subject to the 'possession, custody, and control' of its employer, generally the plaintiff must show that personal devices were used for business purposes." *Goolsby v. County of San Diego*, 2019 WL 3891128 at * 4 (S.D. Cal. Aug, 19, 2019) (citing *Stinson v. City of New York*, 2016 WL 54684 at *5 (S.D.N.Y. Jan. 5, 2016) (noting divide and citing cases) and *Cotton v. Costco Wholesale Corp*., 2013 WL 3819974 at *6 (D. Kan. July 24, 2013) (denying discovery for employee text messages and emails where not issued by employer or used for business purposes)).

Here, the Court will require CrossCountry to produce documents in response to Request Nos. 4 and 10 to the extent they are located on CrossCountry's employees' business email accounts.  In addition, because Jenkins apparently received a video text message from a CrossCountry employee recruiting him for employment at CrossCountry, the Court directs CrossCountry to ask its current employees to search for and provide for production all relevant emails and text messages in their personal email and cell phone accounts which are responsive to Request Numbers 4 and 10.  *See ID Ventures, LLC v. Chubb Custom Ins. Co*., 2018 WL 8807125 at * 2 (E.D. Mich. Oct. 12, 2018) (requiring employer to ask relevant employees to search their email accounts, including personal email accounts, for responsive documents.)  If no such documents exist, CrossCountry must certify as much in writing.  The Court will not, however, direct CrossCountry to produce, or ask its employees to search for and produce, responsive social media messages.  Union Home has offered no evidence that CrossCountry employees have used social media platforms for business purposes.

Accordingly, the Court denies Union Home's Motion to Compel with respect to (1) Requests Nos. 4 and 10 as pertaining to Cheri Uhrinek and Olena Tikiob; and (2) Request No. 4 as pertaining to Defendant Della Torre. The Court otherwise grants Union Home's Motion to Compel with respect to Request Nos. 4, 9 and 10 as set forth above and with the express caveat that CrossCountry is not required to produce, or ask its employees to search for and produce, responsive social media messages.

**C.      Request No. 3**

Finally, Request No. 3 seeks the production of "non-privileged correspondence to or from Jenkins or Della Torre from July 1, 2020 to the present regarding or relating to any restrictive covenants between Union Home and its employees." (Doc. No. 22 at p. 4.)

For the following reasons, the Court grants Union Home's Motion to Compel with respect to this Request. Request No. 3 is narrowly tailored to correspondence relating to restrictive covenants between Union Home and its employees. Moreover, this Request seeks only non-privileged correspondence to or from the named Defendants during a relatively short time period. The Court finds this Request seeks information that is potentially relevant to resolution of Union Home's Motion for Preliminary Injunction and, further, that CrossCountry has not demonstrated that it would be unduly burdensome for it to produce documents in response to this Request.

Accordingly, Union Home's Motion to Compel is granted with respect to Request No. 3.

**IV.      Conclusion**

For all the foregoing reasons, Plaintiff Union Home Mortgage's Motion to Compel as to Non-Party CrossCountry Mortgage, LLC's Production of Documents in response to Subpoena (Doc. No. 22) is GRANTED IN PART and DENIED IN PART, as follows. Plaintiff Union Home's Motion to

20

Compel is DENIED with respect to (1) Request Nos. 1, 2 and 7; (2) Requests Nos. 4 and 10 as pertaining to Cheri Uhrinek and Olena Tikiob; and (3) Request No. 4 as pertaining to Defendant Della Torre.  The Court otherwise grants Union Home's Motion to Compel as set forth above and with the express caveat that CrossCountry is not required to produce, or ask its employees to search for and produce, responsive social media messages.   CrossCountry is directed to produce responsive documents within ten (10) days of the date of this Order.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  March 23, 2021                         U. S. DISTRICT JUDGE

21