IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNION HOME MORTGAGE CORP.,** | Case No. 1:20-cv-02690-PAB |
| **Plaintiff** | |
| v. | JUDGE PAMELA A. BARKER |
| **JASON JENKINS, et al.,** | |
| **Defendants** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon Plaintiff Union Home Mortgage Corp.'s ("Union Home") Motion for an Order to Show Cause Regarding Defendant Jason Jenkins' ("Jenkins") Violations of the Agreed Injunction, filed on August 31, 2021 (the "Motion"). (Doc. No. 81.) On September 14, 2021, Jenkins filed an Opposition to Union Home's Motion ("Opposition") (Doc. No. 85), to which Union Home replied on October 12, 2021 ("Reply"). (Doc. No. 93.) On October 18, 2021, the Court granted Union Home's Motion for an Order to Show Cause and held a Show Cause Hearing on November 15, 2021. (*See* Doc. No. 94 and Minutes of Proceedings, November 16, 2021.) For the reasons set forth herein, Union Home's Motion is GRANTED and the Court holds Jenkins in civil contempt for violating the Agreed Injunction.

I.      **Factual Background**

On December 2, 2020, Union Home filed a Verified Complaint (Doc. No. 1) and Motion for Preliminary Injunction against Jenkins. (Doc. Nos. 3 & 4.)[1] On June 15, 2021, Union Home filed a Motion for Leave to File Amended Complaint, Instanter (Doc. Nos. 61 & 61-1), which was unopposed and granted by the Court. (*See* Non-Document Order of June 28, 2021.) The operative Amended Complaint "includes the previously asserted claims against [Jenkins] but does not assert any additional claims against Jenkins." (Doc. No. 61 at PageID# 2099.)[2] Jenkins had been employed by Union Home as a Senior Loan Officer and Branch Manager at Union Home's Grand Rapids, Michigan office until he resigned his employment on November 28, 2020. (Doc. No. 61-1 at ¶¶ 16, 47.) Jenkins then accepted employment with CrossCountry Mortgage, LLC ("CrossCountry"), one of Union Home's competitors, in Grand Rapids. (*Id.* at ¶¶ 50-52.) Union Home alleges that Jenkins was competing against Union Home in violation of contractual obligations under his employment agreement with Union Home, i.e., the "Jenkins Employee Agreement." (*Id.* at ¶¶ 11, 16, 20-30; *see also* Doc. No. 61-2.) The Jenkins Employee Agreement contains several restrictive covenants, including "a covenant not to compete, a covenant not to solicit employees, and a confidentiality provision." (Doc. No. 81 at PageID#s 2574-75; *see also* Doc. No. 61-1 at ¶¶ 20-26.) Jenkins was working for CrossCountry in the same market (Grand Rapids, Michigan), in which he had been employed by Union Home, despite a geographical restriction on competitive employment in the Jenkins Employee Agreement. (Doc. No. 61-1 at ¶ 53.)

---

[1] The Verified Complaint and Motion for Preliminary Injunction also named another Defendant, Joseph Della Torre ("Della Torre"), who is not the subject of Union Home's instant Motion.

[2] In its Amended Complaint, Union Home represents that the purpose of the Amended Complaint is "to raise additional claims against Defendant Della Torre. Union Home does not intend to make new allegations or raise additional claims against Defendant Jenkins at this time." (Doc. No. 61-1 at PageID# 2106, n.1.) Although it does not add new claims against Jenkins, the Amended Complaint at Doc. No. 61-1 is the operative Complaint in this case as to Jenkins.

Union Home alleges that Jenkins "successfully solicited [Becky] Bosch and [Julie] Kamer – his 'team' – to join him at CrossCountry and took Union Home's confidential information with him." (Doc. No. 81 at PageID# 2575 (citing Jenkins Deposition, Doc. No. 26-2 at PageID# 357 ("I am not trying to take anyone other than my team."); *id.* at PageID# 376 (discussing the Jenkins' Team website).) Moreover, Jenkins is alleged to have sent himself Union Home confidential information before resigning and while negotiating his future employment with CrossCountry so that he would be able to use it to compete against Union Home. (Doc. No. 61-1 at ¶¶ 54-55; Doc. No. 26-2 at PageID# 357-58 (discussing spreadsheets and documents Jenkins and his team took to CrossCountry).)

## II. Relevant Procedural History

On April 19, 2021, the Court was scheduled to hold a hearing on Union Home's Motion for Preliminary Injunction with respect to Jenkins. In lieu of proceeding with the hearing, the parties informed the Court "that they had reached an agreement regarding an agreed injunction with respect to Jenkins." (Doc. No. 42.) Two days later, the parties filed a Joint Motion for Entry of Agreed Injunction against Jenkins (Doc. No. 43), which the Court approved by signing it that same day (the "Agreed Injunction"). (Doc. No. 44.)[3]

The Agreed Injunction "provides for a number of restrictions on Jenkins' conduct, including the following:"

> 8. Until October 30, 2022, Jenkins shall not, directly or indirectly, act as a branch manager or loan originator within a 100 mile radius of Grand Rapids, Michigan (the "Restricted Area") or otherwise facilitate the origination of mortgages for any property

---

[3] The date listed on the Agreed Injunction is April 15, 2021, which is a clerical error because the Agreed Injunction was filed by the parties on April 21, 2021, and therefore would have been, and was signed by the Court and docketed on April 21, 2021. (*See* Doc. No. 44.) Union Home notes the April 21, 2021 date in its Reply and "reference[s] the later date throughout th[at] filing." (Doc. No. 93 at PageID# 2848, n.1.)

3

located in the Restricted Area. Among other things, this restriction precludes Jenkins from, directly or indirectly, soliciting or accepting business from referral sources (e.g., realtors) or prospective borrowers located within the Restricted Area. In the event Jenkins is contacted by referral sources (e.g., realtors) or prospective borrowers located within the Restricted Area, he shall convey that he is not able to accept their business and shall not refer the person, directly or indirectly, to anyone at his Current Employer or otherwise. . . .

9. In furtherance of the restriction in Paragraph 8 and upon entry of this Agreed Injunction through October 30, 2022, Jenkins shall cease all use of Jenkins' name within the Restricted Area in connection with the solicitation of residential mortgage loans. To avoid doubt, this restriction prohibits use of "The Jenkins Team" or words to this effect by Jenkins or any of his "team" members for any purpose associated with loan origination services.

(Doc. No. 81 at PageID#s 2575-76; Doc. No. 44 at PageID# 1057.)

On August 31, 2021, Union Home filed the instant Motion. (Doc. No. 81.) Union Home requested an Order from the Court that "Jenkins be required to show cause as to why he is not in contempt of the Court's Agreed Injunction," and that if Jenkins is unable to do so, that he be required to fully comply with the Agreed Injunction. (*Id.* at PageID# 2585.) Jenkins filed an Opposition to the Motion on September 14, 2021 (Doc. No. 85), to which Union Home replied on October 12, 2021 (Doc. No. 93), also appending a Notice of Supplemental Evidence, which "catalogs recently received evidence from Jenkins' referral sources (*i.e.*, realtors)." (*Id.* at PageID# 2848.) Jenkins moved for leave to file a response to Union Home's supplemental evidence (Doc. No. 97) and the Court denied leave to file a sur-reply, indicating that Jenkins could "respond to any additional arguments and supplemental evidence, and provide his own additional evidence" at the Show Cause Hearing. (Non-Document Order of October 27, 2021.)

On October 18, 2021, the Court issued an Order granting Union Home's Motion for an Order to Show Cause and scheduling a hearing for Jenkins to show cause as to why he should not be held in contempt. (Doc. No. 94.) The Court held a Show Cause Hearing on November 15, 2021 during

4

which it heard testimony from Jenkins and Defendant's witness Timothy Anders. (*See* Minutes of Proceedings, November 16, 2021.)

At the close of the Show Cause Hearing, the parties were given time in which to confer to attempt to reach an agreement on the matter. After several days of time that the Court allotted to the parties for this purpose, counsel for the parties notified the Court that they were unable to effectuate a resolution concerning the matters that were the subject of the Show Cause Hearing. The Court subsequently issued the following:

> At the Hearing, the Court stated on the record and counsel for Defendant Jenkins conceded or agreed that at least one email distributed by Defendant Jenkins (Plaintiff's Exhibit 4) constituted a violation of the Agreed Injunction. At the hearing, the Court inquired of counsel as to their respective positions regarding an appropriate remedy or sanction for this violation and indicated that the Court would consider allowing the parties to submit documentation regarding same.

(Non-Document Order of November 30, 2021.) The Court then granted Union Home 7 days in which to file a post-hearing brief, indicating that said briefing was for the purpose of:

> setting forth its proposed legal conclusions and arguments for an appropriate remedy with supporting documentation, e.g., any attorneys' fees associated with bringing its Motion, costs and fees related to non-party discovery of evidence indicating potential violations of the Agreed Injunction, and an appropriate bond that may be entered against future violations of the Agreed Injunction.

(*Id.*) Jenkins was permitted to file a response to Union Home's post-hearing brief. (*Id.*) Union Home filed its post-hearing brief on December 7, 2021 (Doc. No. 99) and Jenkins filed his response thereto on December 14, 2021. (Doc. No. 100.)

### III.  Standard of Review

"A motion for an order to show cause may be filed if a party believes that another party is not complying with an order of the court." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-3-06-371, 2008 WL 2977891, at *3 (S.D. Ohio July 29, 2008) (citing *Reynolds v. Roberts*, 207 F.3d

5

1288, 1298 (11th Cir. 2000)). "If the motion states a case of non-compliance, the court may order the non-moving party to show cause as to why he or she should not be held in contempt and may schedule a hearing for that purpose." *Id.*

"The moving party must prove by clear and convincing evidence that the party to be held in contempt violated an order of the court." *Id.* (citing *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007)). *See also Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (Movant has "the burden of establishing by clear and convincing evidence that the [defendants] 'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). The prior order must be "definite and specific." *See, e.g.*, *Blackwell v. Simon*, Nos. 20-2171/20-2172, 2021 WL 5822700, at *2 (6th Cir. Dec. 8, 2021). "Ambiguities must be resolved in favor of the party charged with contempt." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)).

"The test for whether an order of the court has been violated is an objective standard that asks whether the alleged contemner has failed to take all reasonable steps within its power to comply with the court's order." *U.S. Diamond & Gold*, 2008 WL 2977891, at *3 (citing *Nettis Env't Ltd. v. IWI, Inc.*, 46 F. Supp. 2d 722, 726 (N.D. Ohio 1999); *see also Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)). "It is not a subjective good faith standard, and there is no requirement of willfulness to establish civil contempt." *Id.*; *see also Rolex Watch*, 74 F.3d at 720 ("Willfulness is not an element

of civil contempt, so the intent of a party to disobey a court order is 'irrelevant to the validity of [a] contempt finding.'") (citation omitted).

"At the hearing, if the movant proves what has been alleged in the motion, the court hears from the non-movant." *U.S. Diamond & Gold*, 2008 WL 2977891, at *3. The non-movant can seek to defend against the civil contempt charge "by produc[ing] evidence showing a present inability to comply with the court's order." *Rolex Watch*, 74 F.3d at 720 (citations omitted). However, "an inability to comply is not established by 'evidence or . . . denials which the court finds incredible in context.' Rather, a defendant must show 'categorically and in detail' why he or she is unable to comply with the court's order." *Id.* (citations omitted). "The respondent must also show that his inability to comply is 'not his own fault or the result of self-induced inability.'" *Gutierrez v. CogScreen, LLC*, No. 17-cv-2378, 2018 WL 6499374, at *4 (W.D. Tenn. Mar. 26, 2018) (quoting *Elec. Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003)). "The court then decides whether the non-movant has complied with the court order and, if not, the necessary sanctions." *U.S. Diamond & Gold*, 2008 WL 2977891, at *3. "The decision whether to hold a person in contempt is within the trial court's sound discretion. . . . The court's discretion 'includes the power to frame a sanction to fit the violation.'" *Adcor Indus., Inc. v. Bevcorp LLC*, 411 F. Supp. 2d 778, 793 (N.D. Ohio 2005) (quoting *Elec. Workers Pension Tr. Fund of Local Union #58*, 340 F.3d at 378).

IV.     **Analysis**

   A.     **Knowledge of the Agreed Injunction**

The Court finds at the outset that Jenkins had knowledge of the Agreed Injunction. (Doc. No. 44.) *See Rolex Watch*, 74 F.3d at 720. "The Sixth Circuit has found that evidence of knowledge of a

7

court order (or constructive knowledge) is sufficient." *Adcor Indus., Inc.*, 411 F. Supp. 2d at 800. "There is no requirement to show intent beyond knowledge of the order." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015). Here, Jenkins and Union Home "informed the Court that they had reached an agreement regarding an [A]greed [I]njunction with respect to Jenkins" (Doc. No. 42) and then jointly moved the Court for entry of the Agreed Injunction. (*See* Doc. No. 43.) Further, during the Show Cause Hearing, Jenkins agreed on the record that he had read the Injunction and had voluntarily assented to its entry. (Hr'g Tr. at p. 7.) Moreover, Jenkins testified, "I have a copy of the [I]njunction on my desk so I reference it often. And any time I'm fearful I am doing something that could be in violation, I reach[] out to [counsel]." (*Id.* at p. 77.) Jenkins surely had knowledge of the Agreed Injunction and its terms.

   **B.**  **Terms of the Agreed Injunction**

  The Agreed Injunction contains several paragraphs of restrictions that apply to Jenkins, with the most substantive provisions appearing in Paragraphs 8 and 9, as set forth *supra*. Therein, Jenkins is enjoined from directly or indirectly acting as a loan originator within the Restricted Area or facilitating the origination of mortgages for any property located in the restricted area. (Doc. No. 44 at ¶ 8.) He is precluded from directly or indirectly soliciting or accepting business from referral sources, (e.g., realtors), or prospective borrowers located within the Restricted Area. (*Id.*) Moreover, Jenkins must cease use of his name in the Restricted Area "in connection with the solicitation of residential mortgage loans," which includes use of "The Jenkins Team" or similar words by Jenkins or one of his "team" members "for any purpose associated with loan origination services." (*Id.* at ¶ 9.)

8

The Court finds that the Agreed Injunction meets the requirement that it be "definite and specific" in order to find a party in contempt for violating it.

### C. Violation of the Agreed Injunction—The June 18, 2021 Solicitation Email (Plaintiff's Exhibit 4)

Union Home argues that Jenkins has violated the Agreed Injunction in several ways.[4] However, for the reasons set forth in Jenkins' Responsive Post-Hearing Brief,[5] which the Court finds well-taken, and based upon the evidence adduced at the hearing, the Court finds that Union Home has not shown by clear and convincing evidence that other than sending an email, identified as Exhibit 4 at the Show Cause Hearing, Jenkins has violated the Agreed Injunction. At the Show Cause Hearing, the Court called particular attention to Plaintiff's Exhibit 4 as a clear violation of the Agreed Injunction. (Hr'g Tr. at pp. 117-20; Doc. No. 81-5.) Plaintiff's Exhibit 4 is an email Jenkins sent on June 18, 2021 (after the Agreed Injunction was in effect) to over two dozen referral sources, which sets forth in part: "[W]e should chat about CCM's [CrossCountry Mortgage's] Community outreach program where we are offering companies the opportunity to offer employees, their friends and family members up to $2198 off closing costs. This is a true savings and we are not upping [the] rate to cover.'" (Doc. No. 81-5 at PageID# 2775; Doc. No. 81 at PageID# 2581.) Union Home points to language such as "we are offering" and "we are not upping [the] rate to cover" as Jenkins "soliciting business for him and his team." (Doc. No. 81 at PageID# 2581.) Moreover, Jenkins' signature block in the email "includes a reference to 'The Jenkins Team', his own NMLS [Nationwide Multistate Licensing System][6] number, the NMLS number of CrossCountry's Grand Rapids branch, and the

---

[4] Doc. No. 99 at PageID#s 3065-66.
[5] Doc. No. 100 at PageID#s 3112-17.
[6] According to Union Home, the Nationwide Multistate Licensing System ("NMLS") "assigns a unique license number to all mortgage loan officers upon registration." (Doc. No. 81 at PageID# 2581 n.5.)

9

address of that branch located in the heart of the [R]estricted [A]rea." (*Id.*) Union Home argues that the email "omits any clarification that, according to the Agreed Injunction, [Jenkins] 'shall not maintain an active license to originate mortgage loans in Michigan' and clearly creates the impression that the opposite is true." (*Id.* at n. 5; Doc. No. 44 at ¶ 10.)

During the Show Cause Hearing, the Court indicated that it was inclined to find Plaintiff's Exhibit 4 to be a violation of the Agreed Injunction, and Jenkins' counsel conceded as much.

| | |
|---|---|
| The Court: | Tell me that's not soliciting business for CrossCountry to realtors in Grand Rapids, to include Ginger Herman, Tim Anders, Sue Prins, individuals that actually gave declarations that he had come to them and said I can't take your business anymore because I've been sued by Union Home Mortgage and I have this [A]greed [I]njunction, and he's acknowledged . . . that this went to those realtors, that he basically referred them to CrossCountry Mortgage and there was an incentive to use CrossCountry, the very incentive that he apprised them about. |
| Mr. Carney: | In a perfect world, if he would have contacted Mr. O'Donnell or me with respect to that communication before sending it, we would have advised him not to. In his mind, he didn't think he was doing anything wrong. But I will -- I will concede, Your Honor, that he crossed the line there. |
| The Court: | Now, let's just say that I agree with you that he crossed the line, this is a breach of the [A]greed [I]njunction, all right, to me, this is the clearest example, and I'm not even saying that there are others, I'm just saying, to me, this is a violation of the [A]greed [I]njunction[.] [W]hat do you propose I do . . . based upon one breach of that [I]njunction that you acknowledge happened or concede could be construed as a breach? |

(Hr'g Tr. at pp. 117-18.)

The Court finds—and Jenkins' counsel conceded—that the email sent to over two dozen referral sources is a violation of the Agreed Injunction. In particular, the email violates the restrictions enjoining Jenkins from "directly or indirectly, soliciting or accepting business from referral sources (e.g., realtors) . . . within the Restricted Area" and the restriction that "prohibits use of 'The Jenkins Team' . . . for any purpose associated with loan origination services." (Doc. No. 44 at ¶¶ 8-9.) Jenkins

10

testified that the majority of the realtors to whom he sent the email are in the Grand Rapids area, (Hr'g Tr. at p. 50), yet also testified that since the Agreed Injunction was entered he has not signed up any employers to be part of the affinity program. (*See* Hr'g Tr. at p. 68.) Nonetheless, the Court finds that Union Home has established by clear and convincing evidence that Jenkins violated the Agreed Injunction with his June 18, 2021 email.

### D. Reasonable Steps Taken to Comply with the Agreed Injunction

With the Court's finding that Union Home has established that Jenkins violated the Agreed Injunction, the burden would ordinarily shift to Jenkins to establish that he was unable to comply with the Court's order. "In the Sixth Circuit, to determine whether a party should be held in civil contempt, the court must consider whether the party 'took all reasonable steps within [his] power to comply with the court's order,' not whether the party acted in good faith." *Metron Nutraceuticals, LLC v. Cook*, No. 1:20-cv-01803, 2021 WL 2946157, at *1 (N.D. Ohio July 14, 2021) (citing *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)). "Therefore, good faith is not a defense, but impossibility is." *Id.* "[T]he 'onus shifts to the opposing party to demonstrate that it was unable to comply with the court's order.'" *Blackwell*, 2021 WL 5822700, at *2 (citation omitted). "To establish that defense, the alleged contemnor must establish three elements: (1) inability to comply; (2) that the inability was not self-induced; and (3) that the contemnor took all reasonable steps to comply." *Id.* "Each element must be proven 'categorically and in detail' [and] [u]nsupported, conclusory assertions will not suffice." *Id.* (citations omitted).

Jenkins conceded that his June 18, 2021 email to referral sources constituted a violation of the Agreed Injunction. Moreover, the Court does not find that Jenkins has come forth with any categorical or detailed evidence regarding the requisite elements of the defense. Jenkins is unable to

demonstrate that he was unable to comply with the Agreed Injunction, that such inability was not self-induced, and that he took all reasonable steps to comply. Jenkins testified that he keeps a copy of the Agreed Injunction on his desk and references it often, even reaching out to counsel to ensure his compliance therewith. (Hr'g Tr. at p. 77.) Yet in this instance, Jenkins sent the email without first taking the reasonable step of securing advice of counsel to ensure his compliance. Accordingly, not only did Jenkins actually concede that he violated the Agreed Injunction, but he is unable to establish the above elements to defend against the contempt finding.

  **E.**  **Sanctions**

"The district court has inherent authority to fashion the remedy for contumacious conduct." *Liberte Capital Group, LLC*, 462 F.3d at 557. This discretion "includes the power to frame a sanction to fit the violation" in question. *Adcor Indus., Inc.*, 411 F. Supp. 2d at 793. "Civil contempt accomplishes three goals . . . (1) it vindicates the Court's authority, at least incidentally; (2) it coerces defendants' compliance with the Court's preliminary injunction; and (3) it compensates [the plaintiff] for the injuries it has sustained as a result of defendants' violations of the [Agreed] [I]njunction." *Stryker Corp. v. Prickett*, No. 1:14-cv-01000-RHB, 2016 WL 4433679, at *11 (W.D. Mich. July 22, 2016), *report and recommendation adopted*, 2016 WL 4415041. In *Stryker*, for example, the court required the defendants to (1) disgorge any profits that were obtained through violations of the injunction; (2) post a forfeitable bond against future violations of the injunction; and (3) pay the plaintiff's costs of bringing the motion for contempt, as well as third-party discovery that the plaintiff conducted in connection with the motion. *Id.*

  **1.**  **Extension of the Agreed Injunction**

Union Home suggests that the "Agreed Injunction be extended for a period of seven months or until and including May 30, 2023 – a lesser amount of time than has passed since the entry of the injunction and a shorter extension than would be supported by the contract itself." (Doc. No. 99 at PageID# 3071.) Jenkins argues against Union Home's suggested seven-month extension of the Agreed Injunction and maintains that because the June 18, 2021 email occurred less than two months after the Injunction was entered (April 21, 2021), Union Home "was only denied, at most, two months of its injunctive relief." (*Id.* at PageID# 3118.) Therefore, Jenkins argues that if the Court determines an extension of the Agreed Injunction is appropriate, it should only be extended by approximately two months. (*Id.*)

The Court finds merit in Jenkins' proposed approximate two-month extension of the Agreed Injunction. (*See* Doc. No. 100 at PageID#s 3118-19.) The Court will extend the Agreed Injunction for a period of fifty-eight (58) days—that is, the amount of days between the entry of the Agreed Injunction on April 21, 2021 and the date of the June 18, 2021 email violating the same. To be clear, the 58-day extension applies to the various dates in the Agreed Injunction. (*See* Doc. No. 44.) For example, Paragraphs 8 and 9's date of October 30, 2022 shall be extended by 58 days to December 27, 2022. Paragraph 10's date of April 20, 2022 shall be extended by 58 days to June 17, 2022. Paragraph 14's date of October 30, 2023 shall be extended by 58 days to December 27, 2023. (*See* Doc. No. 44.)

2. **Attorneys' Fees and Costs**

Union Home argues that Jenkins should "compensate Union Home for the fees and costs of bringing the motion, as well as the third-party discovery it conducted in connection with this motion." (Doc. No. 99 at PageID# 3071.) In support of the fees and costs remedy, Union Home includes a

Declaration in Support of Attorneys' Fees and Costs with attached billing records. (Doc. No. 99-1.) Therein, Union Home's counsel avers that they reduced their standard hourly rates in this matter to less than 70 to 80% of their standard rates. (*Id.* at PageID# 3078, ¶¶ 4-6.) Union Home's counsel represents that they "spent a total of 231.6 hours on the Motion to Show Cause and the non-party discovery of evidence indicating actual or potential violations of the Agree[d] Injunction." (*Id.* at PageID# 3079, ¶ 11.) At the Hearing, counsel for Union Home represented that they received the June 18, 2021 email "from multiple referral sources . . . in response to our subpoenas" and affirmed that they would not have had this evidence of this breach but for incurring the expenses associated with those subpoenas. (Hr'g Tr. at pp. 120-21.) In connection with all of its work, Union Home incurred attorneys' fees in the amount of $87,667.50 and costs totaling $5,808.16. (Doc. No. 99-1 at ¶ 12.) Accordingly, Union Home "seeks a total of $93,475.66 in fees and costs." (*Id.* at ¶ 13.)

Jenkins argues that Union Home should not be compensated for seeking third-party discovery because the timing of the discovery requests "indicates Union Home did not resort to third-party discovery after it failed to get a response from Jenkins and CrossCountry Mortgage on this discovery, but sought the third-party discovery first." (*Id.* at PageID# 3119.) According to Jenkins, Union Home "first served seven subpoenas on realty companies that served as referral sources for Jenkins on July 1, 2021." (*Id.*) Jenkins then moved for a protective order due to the alleged overbreadth of the subpoenas. Union Home then served 36 subpoenas upon "realtors who had previously referred clients to Jenkins" on July 16, 2021. (*Id.*) Jenkins again filed for a protective order. "Eventually, on August 3, 2021, the parties agreed to limit the amount of subpoenas to three main realtors who had previously worked with Jenkins." (*Id.* at PageID# 3120.) Jenkins represents that "[a]fter Union Home issued these subpoenas on realty companies and realtors, and after Union Home had obtained the email the

14

Court found to be a violation of the injunction at the hearing, it issued discovery requests to Jenkins seeking the same information on August 26, 2021." (*Id.* at PageID# 3120.) Moreover, Jenkins argues that Union Home filed its motion for contempt on August 30, before Jenkins' answers to discovery requests were due. (*Id.*) Jenkins also argues that because Union Home was only partially successful on its Motion, any award of attorneys' fees and costs should be reduced accordingly. (*Id.* at PageID# 3121.) That is, "Union Home should only be entitled to compensation for fees and costs spent on the original motion to show cause and the reply brief without the supplement as these briefs included argument as to the June 18, 2021 email." (*Id.*) Likewise, Jenkins argues that Union Home's fees and costs for the hearing "should be reduced to an amount commensurate with the reasonable time spent proving a single violation of the Agreed Injunction." (*Id.*)

    The Court finds that the attorneys' fees and costs should be tailored to the discovery required to obtain evidence of Plaintiff's Exhibit 4 (the acknowledged violation of the Agreed Injunction) as well as the fees and costs associated with Union Home's bringing its Motion and Reply and attending the Show Cause Hearing. The June 18, 2021 email was included as an exhibit to Union Home's Motion. (*See* Doc. No. 81-5.) The file name of this exhibit appears on ECF as "Remax United Mail - Jenkins" (*see id.*) and the email appears to have been obtained from realtor Tom Rich. (*See id.* at PageID# 2774.) The docket indicates that one of the July 1, 2021 subpoenas was sent by Union Home's counsel to "White Pine Properties, Holdings and Investments, Inc., d/b/a *Remax United*." (*See* Doc. No. 65-2 at PageID# 2195.) (emphasis added.) A review of the billing records submitted by Union Home's counsel with its post-hearing brief indicates a billing entry on July 13, 2021 that sets forth in part: "Receipt and review of multiple emails from Tom Rich of Remax United regarding documents responsive to subpoenas and review of documents." (Doc. No. 99-1 at PageID# 3085.) In

addition, billing entries on July 21 and 22 include reference to the receipt and review of documents from Tom Rich regarding Remax United's subpoena response. (*See id.* at PageID# 3089.) The Court will calculate the attorneys' fees associated with discovery of Plaintiffs' Exhibit 4 by adding all attorneys' fees and costs that the Court deems relevant from June 28, 2021, when Union Home began preparing the nonparty subpoenas, until receipt and review of the Remax United discovery. This results in fees and costs associated with non-party discovery in an amount of $10,858.00.

Moreover, the Court will assess attorneys' fees and costs associated with Union Home's bringing its Motion and Reply and attending the Show Cause Hearing. After a review of the billing records that appear to be most applicable, the Court finds that a suitable amount is $23,788.34.[7] In total, the Court finds that the entirety of the attorneys' fees and costs that Jenkins shall be responsible for paying is $34,646.34.

### 3. Forfeitable Bond or Fine

Union Home also requests that "Jenkins post a forfeitable bond to ensure his compliance going forward." (Doc. No. 99 at PageID# 3071.) Union Home asserts that "a sizeable bond of perhaps $500,000 would be appropriate, but Union Home would be satisfied with a bond of $100,000." (*Id.* at PageID# 3073.) Though Union Home requests this sizeable bond amount in its post-hearing brief, the Court notes that in Union Home's Motion, Union Home represents that "a bond of $25,000 against future violations is appropriate." (Doc. No. 81 at PageID# 2584.)

---

[7] In arriving at a suitable amount of attorneys' fees and costs, the Court reviewed Union Home's Declaration in Support of Attorneys' Fees and Costs and the attached billing records. (Doc. No. 99-1.) The Court included the billing entries that it judged to be the most pertinent and which involved substantive work on securing (1) the non-party discovery that led to the receipt of the June 18, 2021 email; (2) the drafting of the Motion and Reply; and (3) travel costs and time spent attending the Show Cause Hearing. The Court appends Exhibit A to this Memorandum Opinion and Order, which sets forth the included attorneys' fees and costs in more detail.

Jenkins argues that a $5,000 fine payable to the Court within fourteen (14) days would be an appropriate sanction for his failure to comply with the Agreed Injunction. (*Id.* at PageID# 3122.) Jenkins will also be "personally liable for any remedy ordered by the Court and will pay the ordered remedy and any awarded attorneys' fees and costs from his own funds. . . . CrossCountry Mortgage will not pay for or reimburse Jenkins for any penalty or fine imposed by this Court." (*Id.* at PageID# 3123.)

The Court finds Jenkins' suggestion of a $5,000 fine well-taken and notes Jenkins' representation that the fine would be paid out of Jenkins' own funds. Based upon the Court's finding of the single violation of the Agreed Injunction resulting from the June 18, 2021 email, the amount of $5,000 is appropriate.

V.  **Conclusion**

Accordingly, and for all the reasons set forth above, Union Home's Motion (Doc. No. 81) is GRANTED and the Court holds Defendant Jason Jenkins in civil contempt for violating the Agreed Injunction. IT IS HEREBY ORDERED that:

A. The Agreed Injunction (Doc. No. 44) shall be extended for a period of fifty-eight (58) days. For clarity, the various restrictions in the Agreed Injunction and their associated time limits are all extended by fifty-eight (58) days.

B. Defendant Jason Jenkins is ordered to pay within thirty (30) days of the date of this Order, Thirty-Four Thousand Six Hundred Forty-Six Dollars and Thirty-Four Cents ($34,646.34) in attorneys' fees and costs associated with Union Home's non-party discovery, bringing the Motion and Reply, and participating in the Show Cause Hearing.

C. Defendant Jason Jenkins shall, within fourteen (14) days of the date of this Order pay a fine of Five Thousand Dollars and Zero Cents ($5,000.00) to the Clerk of this Court.

**IT IS SO ORDERED.**

Date: December 17, 2021

       *s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE